Collins *v.* Toppin.

|      |     |
|------|-----|
| 63   | 381 |
| s65  | 440 |

MARY COLLINS, by John Kenny, her next friend,

*v.*

ANNIE TOPPIN.

[Submitted and decided April 14th, 1902. Filed September 8th, 1902.]

1. A suit in the court of chancery may, by the special order of the court, under circumstances properly brought to its attention, be maintained in favor of a lunatic by his or her next friend, where the lunatic has not been so found upon inquisition and a guardian been appointed.

2. If a bill be filed in the court of chancery in behalf of a lunatic by a next friend, without leave of the court, the proper mode open to the defendant to take advantage of such want of leave is by motion to take the bill from the files, and, under a like motion, the propriety of the original order for leave to file the bill may be drawn in question.

3. The cases of *Norcom* v. *Rogers, 1 C. E. Gr. 484,* and *Dorsheimer* v. *Roorback, 3 C. E. Gr. 438,* reviewed, and some of the *dicta* there found disapproved. *Palmer* v. *Sinnickson, 14 Dick. Ch. Rep. 530,* distinguished.

On motion to strike out demurrer.

*Mr. William H. Corbin,* for the motion.

*Mr. George T. Werts, contra.*

PITNEY, V. C.

The bill in this cause shows that the complainant is insane and incapable of attending to her affairs; that she has not been so found by inquisition, and that she sues by next friend.

The bill does not state that the next friend has been appointed such by the chancellor, or that leave has been obtained to file the bill.

The demurrer states, as grounds, that the bill does not show that the next friend had been in any way appointed the guardian of the complainant, or had been admitted by order of the court to appear as her next friend.

In support of the motion to strike out the demurrer the complainant produced the order of the chancellor, made at the time of the filing of the bill, granting leave that it should be filed by the next friend therein named as such.

In support of the demurrer the defendant relied upon what was said by Vice-Chancellor Grey, in *Palmer* v. *Sinnickson, 14 Dick. Ch. Rep. 530* (at *p. 533*). In that case one of the complainants, being insane, sued by a next friend, and the bill, as here, did not state that it was done by leave of the court; and a demurrer was filed on that and other grounds. The demurrer was sustained on the merits, as against all the complainants; but in dealing with the regularity of the suit, so far as proceeding by a next friend goes, the learned vice-chancellor refers to the cases of *Norcom* v. *Rogers, 1 C. E. Gr. 484,* and *Dorsheimer* v. *Roorback, 3 C. E. Gr. 438,* and uses this language: "In the case under consideration one of the complainants is stated to be a lunatic, who sues by her next friend, but there is no averment that the party who thus seeks to act for the lunatic has been in any way appointed her guardian, or that he has been admitted, by any order of the court, to appear as her next friend. In the absence of such a recital, it cannot be assumed that such an authority has been conferred. The face of the bill therefore shows that one of the plaintiffs cannot maintain the suit. This may be taken advantage of by demurrer, and is fatal to the whole bill."

My examination of the authorities has led me to the conclusion that a demurrer is not the proper mode of raising the question sought to be raised by the demurrer herein when there is a single complainant, but that the proper remedy is by motion to take the bill from the files. This was the course pursued in the case of *Dorsheimer* v. *Roorback,* and also in the case referred

to by Chancellor Green in *Norcom* v. *Rogers,* namely, *Wartnaby* v. *Wartnaby, Jac. 377.*

Be that as it may, I cannot construe Vice-Chancellor Grey's language as holding that if it appeared by an examination of the whole record that leave had been granted by the chancellor to the next friend to conduct the suit, a demurrer would lie.

I think—granting that a demurrer will lie for want of such allegation in the bill—that the demurrant cannot rely upon such omission in the face of the fact that leave was, in fact, granted.

There can, in the nature of things, be no virtue in the mere allegation in the bill of a matter which must appear by the record ·in the very suit. If such an allegation were found in the bill, it would not preclude the defendant from showing that no such leave was granted and taking advantage of the omission. And that he may, and should, do, in my judgment, by a motion to have the bill taken from the files.

And just here is found the reason, in my opinion, why the true practice is to move to have the bill removed from the files. When the bill is filed in the complainant's name by a person other than the complainant, whether it be a solicitor or a next friend, the person so filing it must have authority for his act.

If a solicitor file a bill without authority of the complainant, the true remedy of the defendant is to move to have it taken from the files. On such motion the presumption is, of course, that the solicitor did have authority, and the burden will be on the moving party to show the contrary.

But in the case of an infant or lunatic suing by a next friend, no authority, for obvious reasons, can be presumed, and the next friend must have the leave of the court, manifested by an order made by the chancellor.

In *Norcom* v. *Rogers, 1 C. E. Gr. 484* (at *p. 485*), the chancellor says: "A lunatic sues only by his committee or guardian, who is responsible for the conduct of the suit, or by the attorney-general or *next friend,* where the interests of the guardian clash with those of the lunatic. The right of appearing and prosecuting, or defending, any action in any of the courts of this state, in person, or by solicitor or attorney, is expressly limited by statute to persons of full age and sound memory.' * * *

A bill exhibited by a person of unsound mind *must* have been filed without authority of law. It should, therefore, be taken from the files." It is in that connection that he says: "The objection, if it appear upon the face of the bill, may be raised *by demurrer,* or by motion to take the bill from the files." He was dealing with the case of a person who had been found a lunatic by inquisition, and the bill was filed by him against his own guardian.

In support of the position that a demurrer in such case will lie the chancellor refers to *2 Barb. Ch. Pr. 224.* I do not find that the case cited in the text of that book in support of the use of the demurrer in such a case is pertinent.

But the practice to make use of a motion to take the bill from the files seems to be thoroughly settled.

The only legitimate use, then, that can be made of this demurrer is to treat it as a motion to strike out the bill; and that would bring us back to the question whether a suit can be maintained by a lunatic, who has never been judicially declared such, by next friend, by leave and order of the court.

I must decline to entertain that motion. It should have been made to the chancellor who made the order without advice by a vice-chancellor.

But, as I have examined the subject, I will state the result.

Chancellor Zabriskie dealt with the question in *Dorsheimer* v. *Roorback, 3 C. E. Gr. 438.* That was a motion, on the part of the defendant, to have taken from the files a bill filed in the name of an idiot, not found such by inquisition, by a next friend, he not having been authorized so to do by the court. The learned chancellor expressed the opinion "that idiots and lunatics may sue at law by next friend, to be appointed by the court; but, in equity, *must* sue by the committee or guardian of their estates duly appointed." He holds that when the idiocy or lunacy is not partial, the court will not appoint a next friend, but require an inquisition; "but when a person is only partially incapable, as one merely deaf and dumb, the court will appoint a next friend to be joined with him in the suit, and to conduct it for him." He says that "the authorities all agree that idiots and lunatics must sue in equity by their committees or guardians." That is

undoubtedly so when they have been found such on inquisition and committees have been appointed.

He further states that he found no case or authority in which it is held that they may sue by a next friend, either a volunteer or appointed for the purpose.

I have looked into the authorities on the subject, and, with great respect to that learned chancellor, I come to the conclusion that the rule stated by him is confined to cases where there is already an adjudication of lunacy and the appointment of a committee; and that, if there be none, the court may order a suit to be brought by a next friend. That has been done here.

The question was considered very carefully by Lord Langdale, master of the rolls, in the case of *Nelson* v. *Duncombe, 9 Beav. 211,* and he declared (at *p. 231*) that "a bill may be filed in the name of a person alleged to be of unsound mind, though not so found by inquisition, by any one professing to be his next friend."

*In re MacFarlane, 2 Johns. & H. 673,* a petition was filed by a lunatic, not so found by inquisition, by his next friend, asking for the payment of money out of court; and the petition was entertained and dealt with by Vice-Chancellor Wood, and the motion granted.

The same practice was adopted in *In re Law, 30 L. J. Ch. 512.*

In the much litigated case of *Beall* v. *Smith, L. R. 9 Ch. App. (1874) 85,* a suit was brought by a lunatic, who had not been so found by inquisition, by next friend, and without the order of the court, and carried on against his business manager, for the purpose of settling the manager's accounts. It clearly appeared that the next friend was pecuniarily irresponsible and the mere creature of the manager defendant, and that the suit was really managed by the defendant. Shortly after the filing of the bill a receiver was appointed, and inquisition was then had, resulting in an adjudication of lunacy, but the estate was, nevertheless, administered by the receiver. The committee repudiated the suit, and charged and proved that it was not instituted or conducted in good faith in the interest of the lunatic, but the contrary. It was held that the proceedings, though prosecuted

without the leave of the court, were valid up to and including the appointment of the receiver, and, after that, invalid. Lord-Justice James (at *p. 91*) says: "The law of the court of chancery undoubtedly is that, in certain cases, where there is a person of unsound mind, not found so by inquisition, and therefore incapable of invoking the protection of the court, that protection may, in proper cases, and if and so far as may be necessary and proper, be invoked on his behalf by any person as his next friend. But every person so constituting himself officiously the guardian, committee and protector of a person of unsound mind does so entirely at his own risk, and he must be prepared to vindicate the necessity and propriety of his proceedings if they are called in question, and to bear the consequences of any unnecessary and improper proceedings. He takes the risk, moreover, of having his proceedings wholly repudiated by the lunatic, if he should recover his reason, just as the next friend of an infant runs the risk of having his proceedings wholly repudiated on the infant attaining his full age."

These citations from the English authorities seem to show that the practice prevails there.

The practice of suing by a next friend was adopted in the case of *Kidder* v. *Houston,* decided by Vice-Chancellor Emery, and reported in *47 Atl. Rep. 336.* There a person of weak mind, not declared a lunatic, brought suit by a next friend by leave of the court.

I venture to suggest that the lack of power in this court to entertain a bill filed, by its leave, by the next friend of a person incapable of managing his affairs, by reason of mental incapacity, would show a serious defect in our system of jurisprudence. Numerous cases arise where persons have recently become insane whose rights may require protection by the aid of this court before it is possible to procure a finding of lunacy by an inquisition and the appointment of a committee, and the estate of the lunatic would suffer materially by the delay resulting from the taking of such proceedings and from their liability to miscarry.

Again, there is a large class of persons who are mentally incapable, by reason of age and the like, of managing their affairs, and whose affairs are properly looked after by competent friends,

who refrain, out of regard for the feelings of their relatives, from taking proceedings to have them judicially determined incapable.

A convenient and proper mode of protecting the pecuniary rights of these persons is by the action of a next friend appointed by the chancellor.

The present case is a striking illustration of the importance of this practice. By the bill and affidavits annexed it appears that the complainant was the wife of Martin Collins, who died in October, 1900, and, by his death, she became the owner of valuable and productive real estate in Jersey City. Twice in his lifetime she had been committed to the insane hospital at Morris Plains, upon physicians' certificates and at the instance of her husband, and was there at the time of his death. She has no children, and her sole next of kin and heir presumptive is her brother, the next friend named in the bill. He instituted proceedings in this court in December, 1900, to have her declared a lunatic and a guardian appointed. In the due course of that proceeding a jury was empaneled, and the physician in charge of the hospital at Morris Plains and Dr. John D. McGill, of Jersey City, who had been her family physician, both testified to her insanity, and that she was not likely to recover. The county physician of Hudson county and the warden—a physician—of the county hospital for insane paupers, after a single examination of the complainant, testified to the contrary, and the jury found her of sound mind. She was then discharged from the Morris Plains hospital, and went to live with the defendant in Jersey City. In June, 1901, she conveyed the real estate here in question to the defendant, and a few weeks afterwards was, without the knowledge of her brother, who lived in New York City, committed to the pauper lunatic asylum of Hudson county, under the care of the very physician who had testified before the jury to her sanity.

Under these circumstances, unless a bill could be promptly filed, accompanied by a *lis pendens,* or followed by an injunction, this valuable real estate might, by conveyance, come to the hands of a *bona fide* purchaser before another successful inquisition could be carried through, and the complainant compelled to pass the remainder of her days in a pauper's bed.

The result of my examination of the subject is that I conclude—*first,* that a suit may, by leave of the court, be maintained in this court by a next friend in behalf of a lunatic, who has not been so found upon inquisition; *second,* if the bill be filed in behalf of a lunatic by next friend, without leave of the court, the proper mode open to a defendant, to take advantage of want of leave, is by motion to take the bill from the files; and, under a like motion, the propriety of the original order for leave to file the bill may be drawn in question.

This conclusion does not necessarily hold that a demurrer was not the proper remedy in the case dealt with by Vice-Chancellor Grey, where the lunatic was one of several complainants.

The foregoing has been submitted to the chancellor, and he concurs therein.