MARY A. ISLE, Admx.

*v.*

KATE CRANBY.

*Opinion filed October 25, 1902.*

1. LUNATICS—*lunatic may sue by next friend.* If a person of unsound mind has not been so adjudged or has no conservator, a suit to protect the rights of such person may be brought in his name by some responsible party appointed by the court to represent him as next friend. (*Covington* v. *Neftzger* 140 Ill. 608, overruled so far as conflicting.)

2. SAME—*it is presumed that all adult persons are of sound mind and capable of managing their affairs.* The presumption that all adult persons are of sound mind and·capable of managing their own affairs is not rebutted by an order of court, based upon an *ex parte* affidavit, appointing the affiant to act as next friend of the party alleged in the affidavit to be of unsound mind.

3. SAME—*proper course where party alleged to be insane moves to dismiss suit brought by next friend.* If the court has taken jurisdiction of a case by permitting a bill to be filed in the name of an alleged insane person by a party appointed by the court as next friend, the fact that the alleged insane person appears by attorney and moves to dismiss the case does not oust the court of jurisdiction, but the court may investigate the mental condition of such person, either by hearing evidence and passing upon the question or by submitting the question to a jury.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

JAMES LINDEN, and GUY BROCKWAY, for appellant.

LANGWORTHY & RAYMOND, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

On the second day of October, 1900, Mary A. Isle entered a motion in the circuit court of Cook county that she be appointed next friend of her mother, Henrietta Sackman, a distracted person, to file and prosecute a bill in chancery in the name of Henrietta Sackman against Kate Cranby. The bill desired to be filed was presented to the court with the motion, and sought to compel Kate

Cranby to account for certain moneys, promissory notes, mortgages and other property in her possession belonging to Henrietta Sackman. The motion was supported by the affidavit of Mary A. Isle, to the effect that Henrietta Sackman for many years last past had been a distracted person, who, by reason of her unsoundness of mind, was incapable of managing or caring for her estate; that Henrietta Sackman had no conservator; that she was then under the control of Kate Cranby, who was also her daughter, and that the affiant had no interest in the subject matter of the suit, or otherwise, adverse to the interest of Henrietta Sackman. Thereupon the court entered the following order:

"In the matter of the application of Mary A. Isle to be appointed as next friend to file and prosecute the bill of Henrietta Sackman, a distracted person, against Kate Cranby.

"This matter coming on to be heard on the motion of Mary A. Isle, supported by the affidavit of said Mary A. Isle, and it appearing to the court, by the said affidavit, that the said Henrietta Sackman is a distracted person and that there is no conservator of the estate of said Henrietta Sackman, and that the said Mary A. Isle is a proper person to bring suit as next friend of said Henrietta Sackman, it is ordered that said Mary A. Isle be and she is hereby appointed as next friend of said Henrietta Sackman, to file and prosecute the bill in chancery presented with said motion, said bill being against Kate Cranby."

Thereupon the bill, which was brought in the name of "Henrietta Sackman, a distracted person, by Mary Isle, her next friend, duly appointed theretofore by this court," was filed, which afterwards having been amended, Kate Cranby appeared by her solicitor and filed a demurrer thereto, and Henrietta Sackman appeared by her solicitor and moved the court to dismiss the suit. The solicitor for Mary A. Isle, as next friend of Henrietta Sackman,

moved the court to set the motion of Henrietta Sackman to dismiss the suit, down for hearing for the purpose of determining the mental condition of Henrietta Sackman. This the court declined to do, but sustained the motion of Henrietta Sackman and the demurrer of Kate Cranby, and entered a decree dismissing the bill of complaint, as amended, "for want of jurisdiction, for the reason that the same is brought by the next friend, and not by a conservator," which decree has been affirmed by the Appellate Court. Henrietta Sackman has died since the filing of the transcript in that court, and Mary A. Isle having been appointed her administratrix and having been substituted in her stead in that court, has prosecuted an appeal to this court.

The first question presented by this record is, was this suit properly brought in the name of Henrietta Sackman, a distracted person, by Mary A. Isle, her next friend. We are of the opinion it was. Formerly the right of idiots and lunatics to sue in the courts was not recognized, but this rule has been universally abrogated, and at the present time such persons are as much entitled to have their rights settled by the courts as though they were sane. If an idiot or lunatic have a conservator he should be represented by his conservator, unless for special reasons, as that the interests of the two are adverse, it be proper that some other person be appointed to represent him as next friend. If, however, a person of unsound mind has not been so adjudged or he has no conservator appointed for him, the suit or proceeding is brought in the name of the incompetent by some responsible party to be appointed to represent him as his next friend. Mr. Daniell, in his work on Chancery Practice, thus states the rule: "Suits on behalf of a lunatic are usually instituted in the name of the lunatic; but as he is a person incapable, in law, of taking any step on his own account, he sues by the committee of his estate, if any, or if none, by his next friend, who is responsible

for the conduct of the suit." (Daniell's Ch. Pl. & Pr.— 5th ed.—p. 83.)

In Story's Equity Pleading the author (sec. 66) says: "Where persons are incapable of acting for themselves, although not strictly either idiots or lunatics, the suit may be brought in their name, and the court will authorize some suitable person to carry it on as their next friend. But in every such case it is in the discretion of the court to allow the suit to proceed, or not, and it will order a stay of proceedings or the bill to be taken off the file if the suit is deemed improper."

In *Chicago and Pacific Railroad Co.* v. *Munger*, 78 Ill. 300, which was an action at law, the court say (p. 301): "By our statute the conservator of a lunatic shall demand, 'sue for and receive in his own name, as conservator, all personal property of and demands due the ward,' etc. (Rev. Stat. 1874, chap. 86, sec. 11.) But until the appointment and qualification of the conservator, it is clear, suit is properly brought in the name of the lunatic."

In *Brown* v. *Riggin*, 94 Ill. 560, a bill in chancery was filed by James H. Riggin, an insane person, by his next friend, Ignatius Riggin, to contest a will. The case was reversed for lack of necessary parties defendant, but the propriety of bringing the suit by next friend was not questioned.

In *Speck* v. *Pullman Palace Car Co.* 121 Ill. 33, which was a partition suit, the bill was filed in the name of James Dunn, who was described therein as a lunatic, and who brought the suit by Simeon Straus, as his next friend. The court say (p. 50): "We are not required to assume, from the evidence, that this lunacy [the lunacy of James Dunn] existed when the suit was commenced; but if it did, no conservator having been appointed under our statute, the suit might be prosecuted in the name of the lunatic."

*VanBuskirk* v. *VanBuskirk*, 148 Ill. 9, was a suit in chancery by an insane person suing by next friend. The court

treats the proceeding as entirely proper, saying (p. 26): "No conservator seems to have been appointed for his estate, but this suit has been brought for him by a next friend."

In *Ronan* v. *Bluhm*, 173 Ill. 277, one of the complainants in the bill was an insane person suing by next friend. The court makes no comment on that fact, but seems to recognize such method of bringing suit as correct and the established practice.

· In the case of *Pyott* v. *Pyott*, 191 Ill. 280, a bill for separate maintenance was filed. The defendant being insane, the court appointed the defendant's son as his guardian *ad litem* and next friend and gave leave to file a cross-bill. The defendant, by said guardian *ad litem* and next friend, filed a cross-bill to annul the marriage contract. The court, on page 289, say: "After an inquisition and appointment of a conservator for an insane person under the statutory provisions on the subject, all suits and proceedings in behalf of the lunatic should be brought by the conservator, unless the interests of the conservator are adverse to those of his ward, or for other sufficient reason the court shall deem it better to appoint some other person as next friend to appear for, counsel, prosecute or defend for such insane person. (16 Am. & Eng. Ency. of Law,—2d ed.—601; Hurd's Stat. 1899, chap. 86, sec. 13, p. 1132.) Before such inquisition, the rule which now obtains in both England and the United States is, that a lunatic may sue in his own name by some proper person appointed or recognized by the court as the next friend or guardian *ad litem* for the insane person."

In *Plympton* v. *Hall*, 55 Minn. 22, the doctrine was announced that where persons are incapable of acting for themselves, as in the case of lunatics, they are entitled to the protection of the courts and proceedings will be instituted under its direction. Suit may be brought in their name, and the court will authorize some suitable person to carry it on as next friend or guardian *ad litem;*

and the power of the district courts to exercise such authority is not taken away by the provisions of the general statute authorizing the probate courts to appoint general guardians for insane persons.

In *Beall* v. *Smith*, L. R. 9 Ch. 85, James, L. J., said: "The law of the court of chancery undoubtedly is, that in certain cases where there is a person of unsound mind, not found so by inquisition and therefore incapable of invoking the protection of the court, that protection may in proper cases, and if and so far as may be necessary and proper, be invoked on his behalf by any person as his next friend."

In *Jones* v. *Lloyd*, L. R. 18 Eq. 265, the plaintiff, who sued by a next friend, was a lunatic but had not been so found by inquisition, and he sought to dissolve a partnership of which he was a member, on the ground of his mental condition. The jurisdiction to entertain the suit before the plaintiff had been "found" a lunatic was strenuously denied. On this question the master of rolls said: "Can a suit be instituted by the lunatic, not found so by inquisition, by his next friend? I have no doubt it can. There is authority upon the subject, and it seems to me so distinct that I have no occasion really to refer to the reason. But, independently of authority, let us look at the reason of the thing. If this were not the law, anybody might at his will and pleasure commit waste on a lunatic's property, or do damage or serious injury and annoyance to him or his property, without there being any remedy whatever. In the first place, the lords justices or the lord chancellor are not always sitting for applications in lunacy. In the next place, if they were, everybody knows it takes a considerable time to make a man a lunatic by inquisition, and his family sometimes hesitate about making him a lunatic, or hope for his recovery, and take care of him in the meantime without applying for a commission in lunacy. Is it to be tolerated that any person can injure him or his property

without there being any power in any court of justice to restrain such injury? Is it to be said that a man may cut down trees on the property of a person in this unfortunate state, and that, because no effort of his can be made, no member of his family can file a bill in his name, as a next friend, to prevent that injury? Is it to be allowed that a man may make away with the share of a lunatic in a partnership business, or take away the trust property in which he is interested, without this court being able to extend its protection to him by granting an injunction at the suit of the lunatic by a next friend, because he is not found so by inquisition? I take it those propositions, when stated, really furnish a complete answer to the suggestion that he cannot maintain such a suit."

In *Denny* v. *Denny*, 8 Allen, 311, it is held a court of chancery has authority to entertain a petition filed by a third party representing that the libellant for divorce is insane, and if such insanity is established the court will appoint a guardian *ad litem* to conduct the cause for the libellant. The court, on page 313, say: "The doctrine, as stated in Story's Equity Pleading, (sec. 66,) is, that where persons are incapable of acting for themselves, although not strictly idiots or lunatics, the suit may be brought in their name, and the court will authorize some suitable person to carry it on as their next friend. In every such case it is in the discretion of the court to allow the case to proceed, or not. In *Malin* v. *Malin*, 2 Johns. Ch. 240, the chancellor says: 'A person incompetent to protect himself, from age or weakness of mind, or from some religious delusion or fanaticism, *quem urget fanaticus error, vel iracunda Diana*, ought to come under the protection of the court.'"

Neither is the power of the court to act upon this subject taken away by the provisions of sections 5 and 6 of the Chancery act, (1 Starr & Cur. Stat.—2d ed.—chap. 22, pp. 560, 562,) or section 13 of the act upon lunatics, etc.

(2 Starr & Cur. Stat.—2d ed.—chap. 86, p. 2666.) Under a statute substantially the same in Massachusetts, where the probate courts have the exclusive jurisdiction to appoint guardians for the persons and estates of lunatics, the Supreme Court of that State sustain this view, and hold that the provisions of the statute do not limit the powers of the court in which an action is brought by or on behalf of a lunatic, to appoint a guardian or next friend to appear in his behalf. To the same effect is *Plympton* v. *Hall, supra.*

No authority has been cited holding that a bill will not lie in the name of a lunatic or insane person by his next friend, when he has no conservator, except it be that of *Covington* v. *Neftzger,* 140 Ill. 608. While it does not clearly appear from the opinion in that case that George W. Covington, in whose name the bill was filed by his next friend, Alexander Covington, then had a conservator, we are inclined to think, from a careful reading thereof, that such was the case, in which event the suit should have been brought by the conservator, and not in the name of the lunatic by his next friend. Especially was this true as it appears that the next friend was not appointed by the court but seems to have been a mere volunteer. On the other hand, if the doctrine of that case is that a bill will not lie in the name of a lunatic or insane person who has not been adjudged insane or who has no conservator, by his next friend, it is contrary to the weight of authority and is in conflict with the later decisions of this court, and must be deemed to have been overruled, as it clearly appears that a lunatic or person of unsound mind who has not been adjudged insane or who has no conservator may sue by his next friend.

The next question that arises on this record is, what is the proper course to pursue in case the person who is alleged to be of unsound mind appears in court and protests that he is not of unsound mind and that the suit was instituted and prosecuted without his authority and

against his will, and asks that the same be dismissed?
The presumption is that all adult persons are of sound
mind and capable of managing their own affairs and car-
ing for their estate, and the mere fact that it is alleged
in an affidavit filed in support of a motion by a person
asking that he be appointed the next friend to a particu-
lar person who, it is alleged, is of unsound mind and not
capable of taking care of his own affairs, does not de-
stroy that presumption. Neither would such presumption
be rebutted by the order of the court, based upon *ex parte*
affidavits, appointing such person and permitting him to
file a bill in the name of and on behalf of the person who
is alleged to be of unsound mind, as his next friend. Such
motions are usually made in behalf of persons alleged to
be of unsound mind by some friend, and it is presumed,
we think, in the absence of anything appearing to the
contrary, that whatever consent to the bringing of the
suit such person is capable of giving has been obtained,
and that it is, in fact, his suit; but when he makes known
to the court that it is not his suit,—that he is competent
to take care of his own affairs and that the supposed
friend is a mere intermeddler,—what should the court
do? The individual liberty of the person is involved and
his right to dispose of his property as he may see fit.
These are rights which he cannot be deprived of by any
court, unless it be made to appear that by reason of the
condition of his mind he has become incapable of taking
care of his property. We see no reason, however, under
our practice, why this question cannot be properly dis-
posed of in the cause then pending in court, either by the
chancellor or by submitting the question to a jury, should
a jury be demanded. In the *Pyott case, supra,* on page 289
it is said: "When the mental capacity of a party to a
proceeding arises for determination as an issue in a case
in chancery, (other than bill to contest a will,) the better
practice is to cause the question of sanity to be submit-
ted to a jury for an advisory verdict; but the court is not

without jurisdiction to hear and determine the question without a jury, and even upon verdict rendered by a jury the court may decline to accept the finding of the jury and decide for itself the issue, upon the evidence presented in the case."

In the case of *Howard* v. *Howard*, 1 L. R. A. 610, this identical question was before the Kentucky court of appeals. After having held it was proper to commence a chancery suit in the name of a person of unsound mind by his next friend, when he has no conservator, the court, in disposing of the question, said: "The court, in such state of the case, is presented with the question, what is the proper course to pursue? The individual liberty of the person is involved. His right to dispose, by himself, (provided he does not interfere with the rights of others,) of his property, by sale, gift or otherwise, as he pleases, is at once recognized as an absolute right, which he cannot be deprived of by any court of the land, —not even the highest,—unless it be made to appear that he by age, disease or other cause has ceased to be a man by so far losing his mind as to be incapable of taking care of his property, and has become the victim of shrewd and designing persons. But when he puts in issue the fact that he has thus ceased to be a man and has become a mere hulk, how is the fact to be determined? It seems to us that the issue which thus involves his personal liberty should be settled by his peers—a jury of his country; and for that purpose the chancellor should issue his writ out of chancery, directing an inquiry, by a jury, into the fact as to whether the mind of the person was so impaired by age, disease or otherwise as to render him incapable of understanding and appreciating his property rights to such an extent as to render him unable to protect himself against designing persons; and upon the verdict of the jury, if in the affirmative, the chancellor should appoint a. committee for the person, and allow him to prosecute the suit in his name; but if the verdict

should be in the negative, then the suit should be dismissed, unless the court, from the evidence before the jury, should deem it proper to take other steps in reference to the matter."

We see no good reason why it should be held that the circuit court should be ousted of jurisdiction as soon as the person who it is claimed is of unsound mind, through an attorney, appears and asks that the suit be dismissed, but think that the court, having taken jurisdiction of the case by the appointment of a next friend and having allowed the bill to be filed, has the right to determine for itself the question of whether or not it should retain jurisdiction by investigating the mental condition of the complainant, either by hearing the evidence and passing upon the question or by submitting the question to a jury; otherwise the very object of allowing the suit to be commenced might be defeated by the defendant procuring an attorney, in the name of the complainant, to appear without the knowledge of the complainant, and who, by reason of his mental incapacity, was incapable of taking any action in the case, by employing an attorney or otherwise, and moving that the cause be dismissed. Persons of unsound mind, incapable of caring for themselves or their property, are the special wards of a court of chancery, and the chancellor has the power to investigate, with or without a jury, the question of the mental capacity of the complainant and to determine whether he will retain jurisdiction of the case, and not force the party out of court and into the county court to adjudicate the question of the mental condition of the complainant before a jury in that tribunal, which, by reason of the delay incident thereto, might lead to the entire loss or sacrifice of the complainant's rights. When the solicitor appeared on behalf of Henrietta Sackman and moved the court to dismiss the case, and the court was asked to set that motion down for hearing and to investigate the mental condition of said Henrietta Sack-

man, the court, in declining so to do and in dismissing the cause, committed reversible error.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause remanded to the circuit court for such other proceedings as are not inconsistent with the views herein expressed.

*Reversed and remanded.*