SARAH L. CLARKE, BY GUSTAVE A. HANSON, HER NEXT FRIEND, *Appellant,* v. ANDREW J. KNIGHT, PENN MUTUAL LIEF INSURANCE CO., A CORPORATION, AND SARAH L. CLARKE, BY JOHN C. VINSON, HER GUARDIAN, *Appellees.*

Opinion filed October 24, 1922.

1. When a summons in chancery under Chapter 7838 Laws of 1919 is in due form and served upon the defendant who appears specially for the purpose of attacking the summons or the service of it, the defendant is required to make the motion to quash the writ or the service before the rule day upon which, under the statute, he is required to plead, answer or demur to the bill.

2. Section 2562, Revised General Statutes, which provides that an infant may sue by next friend and in all cases whatsoever idiots and lunatics by their guardians does not apply to persons of unsound mind before they are adjudged to be insane.

3. An aged person, who because of infirmities of age or other physical weakness is of unsound mind and not capable of understanding the nature and effect of her business transactions, may sue by next friend appointed by the court for relief against her improvident contracts into which she may have been misled to her injury.

4. When a suit in equity is brought by an aged person alleged to be of unsound mind but who has not been adjudged to be a lunatic, and a next friend has been appointed by the court to conduct such suit and during the pendency of the suit such person is adjudged to be a lunatic and a guardian of her person and estate appointed, such guardian has no control of the suit begun by the next friend and should take no part in it.

5. The guardian of an insane person who was adjudged to be insane after she had by a next friend duly appointed, commenced a suit in equity for relief against contracts to her injury into the making of which she is alleged to have been misled, will not be permitted to waive the rights of his ward in such litigation and control the suit instituted in her behalf.

An Appeal from the Circuit Court for Hillsborough County, F. M. Robles, Judge.

Order reversed.

*Shackleford & Shackleford* for Appellant;

*Mabrey, Reaves & Carlton; Sparkman & Knight* and *James F. Glen,* for Appellees.

ELLIS, J.—In May, 1921, Sarah L. Clarke, by her next friend, Gustave A. Hanson, exhibited her bill in chancery in the Circuit Court for Hillsborough County against Andrew J. Knight and the Penn Mutual Life Insurance Company, a corporation.

The purpose of the bill was to obtain an accounting from Andrew J. Knight for rents and profits from certain real estate which it was alleged he had obtained from the property, the control and possession of which it was alleged he had fraudulently obtained. And to cancel a certain deed of conveyance made to him by the complainant in

August, 1918, purporting to convey the property described in the bill which it is alleged was valued at about eight hundred thousand dollars. And to cancel certain promissory notes executed by the defendant, A. J. Knight, and the complainant and Jules A. Knight, to the Penn Mutual Life Insurance Company for a sum aggregating two hundred and fifty thousand dollars, and to cancel a certain mortgage given to secure said notes and executed by the complainant in conjunction with the said defendant, A. J. Knight, Ruby M. Knight, his wife, and Jules A. Knight, and Florence Knight, his wife, upon certain parcels of land described in the bill, and for general relief.

In substance the bill alleges: that Sarah L. Clarke is an aged person, about eighty-one years of age, is of unsound mind and incapable and incompetent of managing her own estate or of comprehending or attending to her business affairs generally and that such has been her mental condition for more than five years. That her mental infirmity was occasioned by her advanced age and other concurrent causes. That in August, three years before the filing of the bill, she was seized in fee simple and possessed of certain lands in Hillsborough County described in the bill and alleged to be of eight hundred thousand dollars value.

That Andrew J. Knight married the daughter of the complainant in 1877 and resided with his wife in complainant's home until September, 1918. His wife, the daughter of complainant, died in May 1908 and the defendant married again in the City of New York about October 1918, one month after he had ceased to reside in the home of the complainant.

That the defendant prior to his marriage with complainant's daughter had been in the employment of com-

plainant's husband, Edward A. Clarke, and was in his employment until the time of his death in November, 1886; and that both complainant and her husband reposed great confidence in the ability and integrity of the defendant. That the defendant by reason of his association and intimate relation with the complainant knew of her mental condition and knew that she was incapable of attending to her affairs or of making any contract concerning her property and that such was her mental condition in August 1918 and prior thereto.

That upon the death of complainant's husband the defendant as the trusted friend and employee of complainant's husband took charge and management of all the property and business of complainant, and from the date of the death of complainant's husband up to the present time has continued in the management of said property. That complainant reposed entire confidence and faith in the defendant and believing in his representations and pretenses executed to him, at his request in August 1918 while he was still living in complainant's home and was a trusted agent and adviser of complainant, a deed of conveyance to all her property described in the bill for an alleged consideration of one dollar and other valuable considerations.

That the reason given by the defendant to the complainant for the execution of the deed was that he desired to prevent his son, Clarke Knight, from obtaining possession of the property and from interfering with it or from squandering the same. That the only persons present at the time of the presentation by him to the complainant of the instrument of conveyance were, Sarah V. Knight, an infant under twenty-one years of age, defendant's daughter and granddaughter of the complainant, Florrie Allen, who was living in complainant's home as a member of the fam-

ily, and F. C. Frazee, a Notary Public whom the defendant had brought to complainant's home for the purpose of taking her acknowledgment to the instrument.

That the complainant acceded to the defendant's request and executed the instrument, although by reason of her mental condition she was incapable of understanding the character of the instrument or the effect of its execution by her, and that the defendant knew at the time of the complainant's mental incapacity. That the complainant by reason of her mental condition and not being able to understand the meaning and effect of her act and because of her confidence and faith in the defendant, without questioning his motives and believing in his representations that he would not regard the property as his own but merely wished to protect it from his son, Clarke Knight, executed the deed. That the defendant's representations as to his motives and purposes were untrue and that his statements and representations to the complainant were false and made for the purpose of inducing her to convey the title of the property to him.

That subsequently to the date on which the deed was executed during the month of September, 1919, the defendant procured the signature of the complainant to the promissory notes mentioned in favor of the Penn Mutual Life Insurance Company. Also the execution by her of a mortgage covering certain described property as security for the payment of said notes. That the mortgage was signed jointly by the defendant, his wife, Jules A. Knight and his wife and the complainant. That the complainant was ignorant of the contents of the notes and the mortgage and incapable of understanding their contents, but that she executed them merely because the defendant requested her to do so. That she received no consideration for the same, that the mortgage was not executed by her in the presence

of any subscribing witnesses and never acknowledged by her, although it appears upon its face to have been signed by her in the presence of witnesses and her acknowledgment made before a Notary Public.

That the Penn Mutual Life Insurance Company made the loan, for which the notes and mortgage were given, to Andrew J. Knight, the defendant. And that the agents of the Penn Mutual Life Insurance Company knew the complainant and had known her for a number of years and were perfectly familiar with her mental condition and knew that she was of unsound mind, incapable of executing a valid contract of any kind at the time the notes and mortgage were signed by her.

That at the time of these transactions the complainant had not been adjudged to be of unsound mind by any court, nor had any guardian been appointed to take charge of either her person or estate.

It appears from the record that Gustave A. Hanson, next friend of the complainant, Sarah Clarke, is the husband of Florence Knight Hanson, who is a daughter of the defendant, Andrew J. Knight, and it appears from the allegations of the bill that Flossie Knight Hanson, at the time of the filing of the bill, was under twenty-one years of age.

Upon the return day of the subpoena which was issued in the case the Penn Mutual Life Insurance Company entered its general appearance and Andrew J. Knight, one of the defendants, entered his special appearance for the purpose of quashing the subpoena and the service thereof on him.

The record does not show that any disposition was made of that special appearance and on the 4th day of July,

1921, the complainant filed her praecipe for a decree *pro confesso* against the two defendants for their failure to file any plea, answer or demurrer. But no decree *pro confesso* was entered by the clerk and on the 27th of July, 1921, the Penn Mutual Life Insurance Company filed its answer.

It is unnecessary to set forth the averments of fact made in the answer further than to say that it consisted of a denial of the allegations of mental infirmity as to the complainant or that complainant was seized in fee simple of the lands described and that she only had an undivided one-half interest in certain of the property described in the bill. That at the time of the mortgage the property was subject to liens, such as mortgages, paving assessments and taxes, aggregating over two hundred thousand dollars, for which the property, as well as the complainant, was liable and for which the money borrowed from the Penn Mutual Life Insurance Company was obtained to pay off and discharge. That the loan was made to Andrew J. Knight after a written request was made for it by Andrew J. Knight and all the grandchildren of the complainant, including Flossie Knight Hanson, the wife of Gustave A. Hanson.

That before making the loan, the Company, feeling that it might be attacked by the heirs of the borrower, Sarah L. Clarke, who was then about seventy-nine years of age, and desiring to be fully satisfied as to her capability and mental soundness obtained the opinions of three physicians in the City of Tampa, including John C. Vinson, the husband of one of the grandchildren of the said complainant. That the physicians made a report to the Company to the effect that they had examined the said complainant, Sarah L. Clarke, as to her mental capacity, and they reported

that she fully understood the character of her action "at the time of the execution of the said notes and mortgage."

It appears from the record that Dr. Vinson, Dr. Wallace and Dr. Helms, the three physicians whose opinions were obtained by the Penn Mutual Life Insurance Company as to the mental soundness of Mrs. Sarah L. Clarke in the execution of the mortgage to secure a loan of two hundred and fifty thousand dollars obtained by Mr. Knight, were witnesses to the signature of Mrs. Clarke to that instrument.

On the 27th of June, 1921, about five days prior to the filing of the answer by the Penn Mutual Life Insurance Company, and about three weeks after the defendant, Andrew J. Knight, filed his special appearance as mentioned, John C. Vinson, as guardian of Sarah L. Clarke, filed his petition in the Circuit Court for Hillsborough County for the dismissal of the cause in which Sarah L. Clarke, by her next friend, Gustave A. Hanson, was complainant and Andrew J. Knight and the Penn Mutual Life Insurance Company were defendants. The prayer of the petition was in the alternative, that if the court should not see proper to dismiss the cause that it would make an order substituting as complainant Sarah L. Clarke by John C. Vinson, her guardian, in lieu of Sarah L. Clarke by her next friend, Gustave A. Hanson.

The basis of this petition was the allegation that on the 20th of June, 1921, John C. Vinson had been appointed guardian of Sarah L. Clarke by the County Judge of Hillsborough County and that letters of guardianship had been issued on the date aforesaid. That since the appointment of Vinson as guardian of Mrs. Clarke the management of her estate and the matters pertaining thereto devolved upon him and that the suit referred to was with-

out warrant of authority of law. It appears from the letters of guardianship that Sarah L. Clarke was an insane person and that the appointment of a guardian was necessary and that the guardian named should have the custody and control of the said insane person and duly entitled to take possession and have and hold for her benefit all and singular the goods, chattels, credits and estates of said person during the legal continuance of the guardianship.

On July 12th, 1921, the Judge of the Circuit Court entered an order granting the petition of Sarah L. Clarke, by John C. Vinson, her guardian, for the dismissal of her cause, and dismissed the same upon the ground that ''an insane person must sue by guardian and not by her next friend.''

From this order Sarah L. Clarke, by her next friend, Gustave A. Hanson, appealed to this court.

It appears from the order that the ''summons in chancery'' provided for by the Act of 1919 Chapter 7838 was in due form and that it was served upon the defendant, A. J. Knight, and required his appearance before the Circuit Court of Hillsborough County on the 6th day of June, 1921.

From anything appearing in the record to the contrary, the complainant was entitled to a decree *pro confesso* against the defendant, Andrew J. Knight, on the 4th day of July, 1921, for failure to plead, answer or demur to the bill of complaint.

It further appears that John C. Vinson, who was appointed guardian of Sarah Clarke in June 1921 was the husband of one of the grandchildren of Sarah L. Clarke and one of the witnesses to the signature of Sarah L. Clarke to the mortgage in favor of the Penn Mutual Life

Insurance Company to secure the alleged debt of Sarah L. Clark to that Company in the sum of two hundred and fifty thousand dollars.  And who on the 30th of September, 1919, the day on which the acknowledgment of Sarah Clarke was taken to the said mortgage, but four days after its date, certified to the mental normalcy of Sarah Clarke on the day of the alleged execution by her of the note and mortgage and that she fully understood what she was doing in executing the same and was mentally capacitated to execute the same.  It was he, who on the 20th of June, 1921, applied to the County Judge of Hillsborough County to be appointed guardian of Sarah L. Clarke, ''an insane person.''

Before the filing of the bill in this case the judge of the circuit court upon the petition of G. A. Hanson appointed him next friend of Sarah L. Clarke, who was described in the order to be ''a person of unsound mind.''  The purpose of the appointment being to authorize Hanson, as next friend to Sarah L. Clarke, to file and prosecute the bill in chancery against the defendants, A. J. Knight and the Penn Mutual Life Insurance Company, which bill was presented to the court with the motion of Hanson to be appointed next friend of Mrs. Clarke.

Section 2562 of the Revised General Statutes of Florida provides as follows: ''An infant may sue by his next friend, and in all cases whatsoever, and idiots and lunatics by their guardians.  Before any suit can be brought by the next friend, it shall be his duty to file a bond and security with the court, conditioned to appropriate the amount which may be recovered in said suit (after the expenses of recovering the same are paid), to the use and benefit of said infant.''

When the bill in this case was filed, Sarah L. Clarke

had not been adjudged to be a lunatic, but the fact that she was of unsound mind was alleged in the petition of G. A. Hanson and repeated in the order of the court appointing him next friend.

There is a distinction between the condition of being of unsound mind and incapable of managing one's business affairs, and the condition of being insane to that degree of mental unsoundness where one may be said to be a lunatic. A person's mind may be enfeebled, or nearly destroyed from old age, bodily infirmities or other physical causes and yet whose mind is not impaired to that degree where he could be said to be a lunatic or an insane person. Yet a person whose mental condition is weak to that extent where he or she is incapable of managing his or her own affairs and understanding the nature and character of his or her contracts and obligations and who may be easily misled and deceived, may obtain relief in a court of equity, by his or her next friend, against improvident contracts into which he or she has been misled to his or her injury. It is conceded that certain forms of mental disease, if not all of them, are progressive.

In the case of Croker v. Croker, decided by this court in May, 1922, and reported in 83 Fla. 572, 92 South. Rep. 221, a suit was brought in the name of Richard Croker, Sr., by his next friend, Howard Croker, his son, against Bula E. Croker, the wife of Richard Croker, Sr. The purpose of the bill being to cause certain conveyances and transfers to real estate and personal property by Richard Croker, Sr., to his wife Bula to be cancelled and set aside and that the mental condition of Richard Croker be inquired into and that a committee be appointed to take charge of his person and estate.

In an opinion by Mr. Justice Whitfield, who deliv-

ered the opinion of the court, ( it was stated that ''The issue was the alleged mental incapacity of Richard Croker, Sr., and the undue influence of his wife over him in the disposition of his property. If he is shown to be mentally capable of managing and disposing of his own property, even his own children have no right to interfere, if their vested rights are not thereby invaded. There had been no adjudication of the mental incapacity of Richard Croker, Sr., as a predicate for this suit in his name by next friend, and even if Howard Croker, as next friend, had a right to maintain this suit to test the mental status of Richard Croker, Sr., the evidence amply sustains the finding of the chancellor (who heard and saw all the witnesses testify, including Richard Croker, Sr.), that he is not incompetent as alleged but is fully capable of protecting and controlling his own business affairs and that his dealings with his property are his own competent disposals.''

In going into the merits of that case this court impliedly committed itself to the doctrine that a person of unsound mind and who is incapable of protecting and controlling his own business affairs by reason of his or her mental incapacity may bring a suit in equity by his or her next friend and obtain relief from improvident transactions into which he or she may have been led by fraudulent or designing persons to his or her injury.

In which holding the court placed itself in line with the doctrine announced in many cases both English and American. See note to the case of Isle v. Cranby, 199 Ill. 39, 64 N. E. Rep. 1065, 64 L. R. A. 513.

Such was the doctrine of the English cases, which held that before an inquisition of lunacy a person of unsound mind may sue in a court of equity by his next friend. And in the case of Re Gordon, L. R. 10 Ch. App. Cas 192,

it was held that notwithstanding an inquisition of lunacy and the appointment of a committee, a son was permitted to file a bill as next friend to impeach a settlement made by the lunatic at a time when he was alleged to be incompetent. In granting relief to the son to file the bill to impeach the settlement the chancellor of the court intimated the opinion that the committee of the lunatic's estate must be formally made defendants but ought not to take any part in the contest.

In this case, however, the guardian or committee of the insane person's estate so far from being a defendant and taking no part in the contest, desires to dismiss the bill and thereby waive whatever rights the unfortunate complainant may have in equity against the alleged misconduct of her quondam son-in-law.

In Collins v. Toppin, 63 N. J. Eq. 381, 51 Atl. Rep. 933, the chancellor came to the conclusion that the rule requiring lunatics to sue in equity by their committees or guardians is confined to cases where at the time of the suit there had been an adjudication of lunacy and the appointment of a committee and that if there was none the court could order the suit to be brought by next friend. And in Lamb v. Lamb (N. J. Eq.), 23 Atl. Rep. 1009, a next friend was appointed by the court to conduct a suit for a person of unsound mind against the contention that she could only sue by guardian. To the same effect is Penington v. Thompson, 5 Del. Ch. 328, in which it is also said that the right to sue in equity by next friend where there has been no inquisition of lunacy is sustained and that even where a guardian or committee has been appointed the suit can be maintained by next friend where the interests of the committee clash with those of the lunatic.

In Howard v. Howard, 87 Ky. 616, 9 S. W. Rep. 411, 1 L. R. A. 610, the court said that the Kentucky Civil Code which permitted any person of unsound mind to sue by next friend simply declared a rule of chancery practice. In Wilson v. Oldham, 12 B. Mon. (Ky.) 55, and Newcomb v. Newcomb, 13 Bush. (Ky.) 544, the right of a person of unsound mind who has never been declared a lunatic to sue by a next friend is sustained. To the same effect are Parsons v. Kinzer, (Tenn.) 3 Lea 346 and Bird v. Bird (Va.) 21 Gratt. 712. See also Dudgeon v. Watson, 23 Blatchf, 161, 23 Fed. Rep. 161, and Pyott v. Pyott, 191 Ill. 280, 61 N. E. Rep. 88.

There is a difference in the civil status of one who is not of sound mind which may be enfeebled or nearly destroyed from old age, bodily infirmity or other physical causes and is incapable because of such condition to manage his affairs, and one who has been adjudicated to be a lunatic or insane.

Yet, a person of the former class is as much entitled to the protection of the courts from the consequences of improvident dealings or the aggressions of deceitful or designing persons as one of the latter class. To deny one of the former class the protection which the law contemplates shall be given, would be a blemish upon the jurisprudence of the country.

From early times in English jurisprudence to the present in American Equity practice it has been the custom for the chancellor upon proper application and showing made to authorize persons of the first class to apply to a court of equity by next friend for relief against agreements, mortgages and conveyances which the person of unsound mind had been improperly induced to make or execute to the advantage or gain of some unscrupulous or design-

ing person or persons.  To deny such relief would be a denial of one of the highest functions of a court of equity. The chancellor's order appointing a next friend for Mrs. Clarke and authorizing the filing of the bill of complaint in her name was eminently proper.

Now that bill discloses a situation which if true amply warrants and justly demands the relief prayed.  A repetition of the facts alleged in the bill is unnecessary here. They are clearly and forcefully set forth therein and disclose a situation that calls for the closest and most careful scrutiny to the end that an aged and enfeebled woman whose mind is impaired by age and perhaps physical weakness shall not be bereft of her property by one who occupied toward her a relation which required of him the exercise of the highest degree of good faith.  There can be no higher demand upon a court of chancery for the exercise of its powers than the one presented in the case at bar.

Yet the guardian of Mrs. Clarke, who upon a writ of inquirendo  and  adjudication  of  Mrs.  Clarke's  insantiy  was  appointed,  would  assume  the  responsibility  of  waiving  the  rights  secured  to  her  by  the law, surrender the benefits to which she may be entitled by proof of the facts alleged and yield to another, whom it is alleged took advantage of a highly confidential relation and as it is alleged by perpetrating fraud upon his friend, a woman of advanced age and mental infirmities, secured a large property for himself, the gain of which he thus unfairly obtained.

Such an attitude by the guardian of an insane person before the Equity Courts of this country cannot be justified.  It does not lie with the guardian to pass upon the merits of the case which was at issue.  It was not for him to impose his will upon the conscience of a court of

equity whose powers had been invoked to correct an alleged great wrong.

We do not wish to be understood as giving any opinion upon the merits of the case as presented by the bill, nor even to intimate that there is any foundation in fact for the allegations of fraud contained therein.  There is before us the fact that a bill containing ample grounds for relief against the defendants, who are alleged to have profited by the perpetration of fraud upon an unsuspecting, confiding old lady whose age and mental infirmities made her an easy prey to designing persons.  A right to a *pro confesso* decree against one of the defendants, subject to the chancellor's discretion to open it, and a denial by one of the defendants of the facts relating to the mental unsoundness of the complainant.  The averment in the answer of such defendant that fearing the transaction might be attacked by the grandchildren of the complainant, "the heirs of the borrower," on account of her alleged age and mental weakness, secured the opinion of three physicians as to her mental capacity.  The further fact that one of the three physicians, the husband of complainant's grandchild, subsequently obtained the appointment as guardian of the lady, who sometime after his certificate as to her mental soundness, was adjudicated to be a lunatic.

The record discloses no financial interest of the guardian antagonistic to the complainant, but it discloses a professional interest which is strongly antagonistic to the complainant's right to the relief prayed for.  As physician he had certified about a year and a half before to the mental qualifications of the complainant to manage and transact her own affairs.  That she was fully capable of understanding the nature and character of the transaction which he witnessed and yet about a year and a half

afterwards he applies to the court for an appoantment as guardian of the·same person as an insane person.

While the two positions are not inconsistent, the interest which the guardian would naturally take in upholding the correctness of his former opinion as physician would place him in an antagonistic position to his ward whose equities depend upon the error of such opinion. His attitude before the court below in seeking the dismissal of the case, while it may not have proceeded from such motive, it nevertheless amounted to an assertion that his former opinion was correct and an unwillingness to have it reviewed. And this he was willing to insist upon at the expense of his ward, assuming that a court of chancery whose sole power it was to adjudicate the question might decide otherwise, if there was not even a strong probability of its doing so.

There was no guardian of the complainant when the suit was brought, nor had she been adjudged to be insane. The statute quoted therefore does not apply. The purpose of the statute was not to abridge an equity rule, nor to take from a court of equity the power to guard the rights and protect the interests of persons of unsound mind. So that the subsequent adjudication of Mrs. Clarke to be an insane person and the appointment of a guardian for her did not operate as a dismissal of the suit nor take away the court's power under the case presented to determine whether the cause contained any equity upon which to base the relief prayed for.

In view of the obvious antagonistic interests of the guardian, and his willingness to assume the responsibility of deciding his· ward's rights against her, rather·than submit them to the impartial investigation of a court of equity, the chancellor should have denied the motion to dismiss.

There is nothing in the statute quoted which prevents such action. The order appealed from is reversed with directions to enter an order *pro confesso* against the defendant, A. J. Knight, without prejudice to his right to move to reopen the same for good cause shown, and the further direction to make John C. Vinson, as guardian of Mrs. Clarke's estate, party defendant.

It is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.