No. 33,850

JOSEPH M. HENRY and MARY SHINTAFFER, *Appellants*, by E. S. BASKETT, JOE B. BASKETT, D. McFALL and M. O. ALDERFER, Their Next Friends, *Appellees*, v. JASPER SHERMAN EDDE, *Appellee*.

(79 P. 2d 888)

Opinion filed June 11, 1938.

*Paul B. Bailey,* of Hiawatha, and *Joseph C. Reavis,* of Falls City, Neb., for the appellants.

*Harry E. Miller* and *Walker F. Means,* both of Hiawatha, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: Joseph M. Henry, a single man, and his sister, Mary Shintaffer, a widow, were, in December, 1935, the owners as tenants in common of four hundred acres of land in Brown county, Kansas, fifty-seven acres in Jackson county, Kansas, and one hundred and sixty acres in Ellis county, Oklahoma. They also owned farm implements, cattle and hogs, hay, grain and other personal property in Brown county.

On December 5, 1935, Joseph M. Henry and Mary Shintaffer executed a deed to the land in Brown and Jackson counties, and a bill of sale to the personal property, to one Jasper Sherman Edde. In the deed a life estate was reserved to the grantors. The consider-

ation specified in the instrument was one dollar and love and affection.

These grantors had no children. Their nearest relatives were their uncles, E. S. Baskett and Joe B. Baskett. The grantee in the deed, Jasper Sherman Edde, was not related by blood or marriage to the grantors, Henry and Shintaffer.

Several days after the execution of the deed Joseph M. Henry, accompanied by his two uncles, the Basketts, appeared at the office of Lloyd Miller, an attorney in Hiawatha, and related the circumstances under which the transfer of the property was made to Edde. Later, on the same day, Miller went to the home of Henry near Sabetha and discussed with him and his sister the matter of bringing an action to set aside the transfers of the land and personal property which had been made to Edde. Miller was employed to bring the necessary action, and the suit was filed December 14, 1935. On December 20, 1935, a letter signed by Henry and his sister was sent to Miller asking that he proceed no further in the action.

On January 8, 1936, a petition was filed in the probate court of Brown county alleging that Henry and Shintaffer were incompetents. Before service could be had on these parties, they removed to Falls City, Neb., where they have since resided. Jasper Sherman Edde, the grantee in the deed, has been a resident of Falls City since 1934.

On January 13, 1936, Paul B. Bailey, an attorney of Hiawatha, on behalf of Henry and his sister filed a motion to dismiss the action brought by Miller. This motion was overruled by the court. The journal entry recites "there is a dispute between the attorneys as to the representation of said plaintiffs, and it further appearing to the court that there is a question as to the competency of Joseph M. Henry and Mary Shintaffer."

After several continuances, on October 22, 1937, E. S. Baskett, Joe B. Baskett, D. McFall and M. O. Alderfer filed an application stating that Joseph M. Henry and Mary Shintaffer were incompetents, and incapable of prosecuting the action against Edde, and that for the preservation of their property and the protection of their interests the action be prosecuted to a conclusion, and that the applicants as next friends be permitted and authorized to prosecute the action. Objections to the application were filed, a hearing was had, and on November 3, 1937, the court found the parties Henry and Shintaffer were both incompetent, and incapable of prosecuting

the action against Edde for the recovery of the property in question, and that it was important and necessary for the protection of their interests that the action be prosecuted to a conclusion. The court made an order directing that the applicants as next friends be permitted to prosecute the action and to file an amended petition.

The amended petition recited:

"Come now Joseph M. Henry and Mary Shintaffer, brother and sister, incompetent persons, by E. S. Baskett, Joe B. Baskett, D. McFall and M. O. Alderfer, their next friends, and for their cause of action against the said defendant, allege and aver:

"1. That Joseph M. Henry and Mary Shintaffer are nonresidents of the state of Kansas, and are residents of Richardson county, Nebraska, and are incompetent persons having no legally appointed guardian, and bring this action through E. S. Baskett, Joe B. Baskett, D. McFall and M. O. Alderfer, their next friends."

The petition is in three counts and sets out at length the fraudulent representations and deceit by which, as was alleged, Joseph M. Henry and Mary Shintaffer were induced to transfer their land and personal property to Edde.

On November 18, 1937, E. S. Baskett *et al.* made application to the district court setting forth that Henry and Shintaffer are residents of Nebraska; that they are incompetents and incapable of managing their affairs; that they are the owners of real and personal property in Brown county, Kansas, which is in danger of being lost, diminished or destroyed, unless a guardian be appointed to preserve the property, and asked that a guardian of their estate be appointed. Objections were filed, a hearing held, and the court sustained the application, and appointed one Norman M. Saylor as guardian.

On November 2, 1937, the defendant Edde reconveyed the land, and on December 9, 1937, executed a bill of sale transferring the personal property to Henry and his sister.

This appeal is presented to this court by Paul B. Bailey and Joseph C. Reavis, as attorneys for Joseph M. Henry and Mary Shintaffer. The appeal is from the various orders and rulings above set forth and from the order and decision overruling plaintiffs' amended motion for a new trial.

It is asserted that the trial court erred in denying the motion of the plaintiffs to dismiss the action. Our statute, G. S. 1935, 60-3105, provides:

"An action may be dismissed without prejudice to a future action: *First.* By the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court."

Under the statute the right of a plaintiff to dismiss his action without prejudice, at any time before the final submission of it, is absolute, and a denial of his application to so dismiss is prejudicial error. (*Banking Co. v. Ball*, 57 Kan. 812, 48 Pac. 137; *Amos v. Loan Association*, 21 Kan. 474; *Wehe v. Mood*, 68 Kan. 373, 75 Pac. 476; *Cott v. Baker*, 112 Kan. 115, 210 Pac. 651.)

In *Banking Co. v. Ball* the court said:

"The plaintiff is entitled to control the disposition of his action, where the application is seasonably made and until the final submission of the cause. It was a common-law right, and, in this state, the statute expressly provides that the plaintiff may dismiss without prejudice to a future action, before the final submission of the case to the jury, or to the court, where the trial is by the court." (p. 813.)

Under the rule announced in the foregoing authorities, long adhered to by this court, we think the motion to dismiss filed on January 13, 1936, should have been sustained.

Did the district court have jurisdiction to permit the action to be prosecuted to a conclusion by the next friends of the applicants?

Our statute, G. S. 1935, 39-201 to 39-203, provides a guardian may be appointed for the person or estate of an insane or incompetent person. Section 39-209 specifies it shall be the duty of such guardian to prosecute and defend all actions instituted in behalf of or against the ward. Section 60-408 authorizes suit to be brought against an insane or incompetent person, and in certain cases provides that a guardian *ad litem* shall be appointed by the court.

Our statute, G. S. 1935, 60-406, directs that an action on behalf of an infant must be brought by his guardian or next friend. But there is no statute that permits an action to be instituted on behalf of an insane or incompetent person by a next friend. It is true that in *Talbot v. Wulf*, 122 Kan. 1, 251 Pac. 438, it was adjudged that an action on behalf of an incompetent person could be instituted or maintained by his next friend. In that case, however, the action was originally brought by the next friend. In the case now before us the record shows that Henry and his sister employed Mr. Miller to file the suit in their behalf. The action was filed on December 14, 1935. Six days later the plaintiffs, by written letter, notified Miller not to proceed further in the matter, and stated that they had employed Mr. Bailey to represent them. Thereafter and on January 13, 1936, Mr. Bailey, on behalf of plaintiffs, filed a motion to dismiss the action. It was not until the following October that

the relatives of the plaintiffs made application to prosecute the action as next friends of the plaintiffs.

It is not claimed that the mental condition of the plaintiffs was impaired in any degree after the filing of the suit. If the plaintiffs were competent when the suit was filed, they were competent to demand its dismissal. The doctrine of the Talbot case could not be authority for a case like this. We think, therefore, the trial court was in error in sustaining the application of the next friends to prosecute the original action to a conclusion.

Appellants next contend the trial court erred in appointing a guardian for the estate of the plaintiffs. At the time this order was made the plaintiffs had changed their domicile to the state of Nebraska. In *Trust Co. v. Allen,* 110 Kan. 484, 204 Pac. 747, it was said:

"In this state it has been held that the jurisdiction for the appointment of a guardian of a minor is in the county of the minor's domicile in the absence of any express statute upon that question. (*Connell v. Moore,* 70 Kan. 88, 78 Pac. 164.) And in *Foran v. Healy,* 73 Kan. 633, 85 Pac. 751, it was held that the jurisdiction to appoint a guardian over the person and estate of a lunatic belongs exclusively to the probate court of the county where such lunatic has a permanent residence. By analogy there is every reason to hold that the jurisdiction to appoint a permanent guardian over the person and estate of a lunatic belongs exclusively to the courts of the state where such lunatic has a permanent residence." (p. 491.)

*Trust Co. v. Allen* was quoted with approval in *Morrissey v. Rodgers,* 137 Kan. 626, 21 P. 2d 359. The syllabus in the latter case reads:

"The place of permanent residence of an incompetent person at the time of the appointment of a guardian for him is an essential, collateral, jurisdictional question of fact, and this fact is not conclusively established by the appointment by a court having jurisdiction of the subject matter, and in a proper collateral action or proceeding the true place of the permanent residence of the incompetent may be shown for the purpose of disproving jurisdiction in a court assuming authority to make such appointment." (Syl. ¶ 3.)

We think it clear that the district court was without jurisdiction to appoint a guardian for the estate of the nonresident plaintiffs.

One further observation must be made. The action was brought to recover real and personal property. During the progress of the litigation the property, real and personal, has been re-transferred to the plaintiffs, Henry and his sister. The object of the suit has been accomplished. When the action was originally instituted it presented an existing controversy. By the act of the parties occurring

after the commencement of the action, the question involved has become moot. It is the function of a judicial tribunal to determine real controversies, and not to decide moot questions. (*Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 235; 1 C. J. S. 1012, 1017.)

The cause is reversed with directions to set aside the orders of the trial court hereinbefore mentioned, and to dismiss the action.

ALLEN, J. (dissenting): I view the matter in a very different light.

1. Conceding the incompetents had capacity to change their domicile (*Cadwalader v. Pyle,* 95 Kan. 337, 148 Pac. 655), the fact that they had acquired a domicile in Nebraska would not affect the jurisdiction of the Kansas court. In *Dillon v. Heller,* 39 Kan. 599, 603, 18 Pac. 693, it was said: "All things within the territorial boundaries of a sovereignty are within its jurisdiction; and generally, within its own boundaries, a sovereignty is supreme. Kansas is supreme except so far as its powers and authority are limited by the constitution and laws of the United States." (See, also, *Arndt v. Griggs,* 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918.)

A state may, through courts authorized to do so, act in rem on property within the state. Such action may be taken with regard to both real and personal property within the state regardless of the whereabouts or residence of the owner of the property. Notice to adverse parties and opportunity to be heard in the litigation affecting the property are probably necessary to make the action a judicial proceeding. (Goodrich on Conflict of Laws, 119; 1 Beale, Conflict of Laws, 435.) Here the suit was brought by the plaintiffs. The court thus had jurisdiction of the person and the subject matter.

2. Did the trial court err in refusing to dismiss the action?

The plaintiffs, Henry and his sister, had conveyed to Edde, a stranger, for a consideration of one dollar and love and affection, 400 acres of land in Brown county and fifty-seven acres in Jackson county. At the same time, by a bill of sale, the plaintiffs transferred to Edde all of their livestock (6 head of mules, 6 head of horses, 58 head of cattle, 108 hogs, etc.), all of their grain, hay and feed, and all of their farm implements. There was testimony tending to show that at the time of this transfer Edde owed the plaintiffs large sums of money which he had borrowed from them. Aside from the life estate reserved in the land, the plaintiffs were stripped clean of their worldly possessions. A stark recital of these facts shows that plaintiffs were so stunted and undeveloped mentally that they were in-

capable of managing their own affairs. Likewise, the transfer of the property showed fraud on the part of the recipient. In the circumstances it was a gift that no good man deserved, and no just man would accept.

Dates are important. The original suit was filed December 14, 1935. On January 8, 1936, guardianship proceedings were instituted in the probate court. On January 13, 1936, the motion to dismiss was filed. Manifestly, as the trial court was cognizant of these facts, it was not only the right, but the duty of the court to refuse to dismiss the action. This court has so held.

In *Talbot v. Wulf*, 122 Kan. 1, 251 Pac. 438, it was said:

"A court is not obliged to tolerate an action instituted on behalf of an incompetent by a mere busybody, or which does not appear to be for the best interest of the incompetent; but a court is not obliged to dismiss an action for vindication of some important, legally protected interest of an incapable because the action was not commenced in due form." (p. 3.)

This seems to be the uniform rule.

In *Holland v. Riggs*, 53 Tex. Civ. App. 367, 373, 116 S. W. 167, the court said:

"To require the dismissal of the suit commenced and prosecuted by the next friend in behalf of the alleged incompetent individual, merely at the dictation of the latter, would practically destroy the efficiency of those salutary regulations adopted in such proceedings for the purpose of preserving valuable property rights of an unfortunate class of people who are incapable of managing their own business affairs. The same influence which in the first instance caused the incompetent to part with her property and which afterwards made it necessary for others to interfere in her behalf, might with equal facility dictate a repudiation of proffered assistance and a demand for the dismissal of the action. If the accused party is insane at the time of trial, or mentally incompetent to attend to her own business affairs at the institution of the suit, she is no more capable of conducting the suit or of determining whether or not it shall be maintained than she was of disposing of her property in the first instance. She could as easily be made the victim of fraud in the one transaction as in the other."

In *Isle v. Cranby*, 199 Ill. 39, 49, 64 N. E. 1065, 64 L. R. A. 513, the court said:

"We could see no good reason why it should be held that the circuit court should be ousted of jurisdiction as soon as the person who it is claimed is of unsound mind, through an attorney, appears and asks that the suit be dismissed, but think that the court, having taken jurisdiction of the case by the appointment of a next friend and having allowed the bill to be filed, has the right to determine for itself the question of whether or not it should retain jurisdiction by investigating the mental condition of the complainant, either by hearing the

evidence and passing upon the question or by submitting the question to a jury; otherwise the very object of allowing the suit to be commenced might be defeated by the defendant procuring an attorney, in the name of the complainant, to appear without the knowledge of the complainant, and who, by reason of his mental incapacity, was incapable of taking any action in the case, by employing an attorney or otherwise, and moving that the cause be dismissed. Persons of unsound mind, incapable of caring for themselves or their property, are the special wards of a court of chancery, and the chancellor has the power to investigate, with or without a jury, the question of the mental capacity of the complainant and to determine whether he will retain jurisdiction of the case, and not force the party out of court and into the county court to adjudicate the question of the mental condition of the complainant before a jury in that tribunal, which, by reason of the delay incident thereto, might lead to the entire loss or sacrifice of the complainant's rights."

The rule in New Jersey is stated in *In re Goldberg*, 108 N. J. Eq. 366, 155 Atl. 137.

"The chancellor is the general guardian of all infants and lunatics and when they are brought before the court, jurisdiction *parens patriae* obtains and they are wards of court (*In re Rhodes*, 100 N. J. Eq. 370, citing *Greenberg v. Greenberg*, 99 N. J. Eq. 461), and the petitioner may not dismiss the proceedings to the detriment of a lunatic who is a ward of court without the chancellor's consent, and he will not consent unless it is for the best interest of the lunatic so to do." (p. 369.)

See, also, 32 C. J. 762, 775.

3. Did the district court have jurisdiction to permit the prosecution of the action by the next friends of the plaintiffs?

In *Talbot v. Wulf*, 122 Kan. 1, 251 Pac. 438, quoted above, an action was commenced by C. W. Talbot, by his next friend, to recover property procured from plaintiff by fraud. Defendant demurred on the ground plaintiff had no capacity to sue. On this point this court said:

"The statute dealing with the general subject of insane, incompetent and dependent persons provides for appointment of a guardian for one who is insane, a lunatic, an imbecile, or feeble-minded, and who for any of these reasons is incompetent to manage his affairs. The same statute provides that it shall be the duty of such guardian to prosecute and defend all actions instituted in behalf of or against his ward. (R. S. 39-209.) The code of civil procedure contains no provisions with reference to commencement of an action by an insane or incompetent person, but does provide that, in an action against such a person, the court shall appoint a guardian *ad litem* for him, in case his legally appointed guardian fails to appear, or in case no guardian has been appointed. (R. S. 60-408.) There is no statute which in terms forbids commencement of an action by an incompetent by his next friend, when incompetency has not been adjudged and no guardian has been appointed.

Under these circumstances, the court is of the opinion the common law permitting such a person to sue by his next friend has not been abrogated. The authorities are quite uniform that such an action may be maintained when the person in whose behalf the action is commenced is not insane, but is merely incapable of managing his affairs, has not been adjudged to be incompetent, and has no duly appointed guardian. (Case notes, 64 L. R. A. 513; 2 L. R. A., n. s., 961.)"

See, also, 32 C. J. 764, 772; 14 R. C. L. 611; *Parrish v. Rigell*, 183 Ga. 218, 188 S. E. 15, 107 A. L. R. 1385.

The syllabus in the Talbot case reads:

"An action may be maintained by an incompetent person by a next friend, when the incompetent is not insane but is incapable of managing his affairs, and incompetency has not been adjudged and no guardian has been appointed."

It is submitted that this carefully considered case is contrary to the majority opinion. For it would seem entirely immaterial whether the action was originally instituted by next friends of the plaintiffs, or whether the order to prosecute the action to a conclusion by next friends was made thereafter upon discovery of the incompetency.

In Story's Equity Pleading, 10th ed., 67, it is said:

"Where persons are incapable of acting for themselves, although not strictly either idiots or lunatics, the suit may be brought in their name, and the court will authorize some suitable person to carry it on as their next friend. But in every such case it is in the discretion of the court to allow the suit to proceed, or not; and it will order a stay of proceedings, or the bill to be taken off the file, if the suit is deemed improper."

In *Jones v. Lloyd*, Law Rep. 18 Equity 265, the plaintiff who sued by a next friend was a lunatic, but had not been so found by inquisition, and he sought to dissolve a partnership of which he was a member, on the ground of his mental condition. Jurisdiction to entertain the suit was denied. Jessel, M. R., said:

"That, then, being his right, can it be exercised? that is, can a suit be instituted by the lunatic, not found so by inquisition, by his next friend? I have no doubt it can. There is authority upon the subject, and it seems to me so distinct that I have no occasion really to refer to the reason, for I think the cases of *Light v. Light* (1) and *Beall v. Smith* (2) are such authorities; but independently of the unreported case of *Fisher v. Melles*, where I know the point was discussed, and independently of authority, let us look at the reason of the thing. If this were not the law, anybody might at his will and pleasure commit waste on a lunatic's property or do damage or serious injury and annoyance to him or his property, without there being any remedy whatever. In the first place, the Lords Justices or the Lord Chancellor are not always sitting for applications in lunacy. In the next place, if they were, everybody

knows it takes a considerable time to make a man a lunatic by inquisition, and his family sometimes hesitate about making him a lunatic, or hope for his recovery, and take care of him in the meantime without applying for a commission in lunacy. Is it to be tolerated that any person can injure him or his property without there being any power in any court of justice to restrain such injury? Is it to be said that a man may cut down trees on the property of a person in this unfortunate state, and that because no effort of his can be made, no member of his family can file a bill in his name as a next friend, to prevent that injury? Is it to be allowed that a man may make away with the share of a lunatic in a partnership business, or take away the trust property in which he is interested, without this court being able to extend its protection to him by granting an injunction at the suit of the lunatic by a next friend, because he is not found so by inquisition? I take it those propositions, when stated, really furnish a complete answer to the suggestion that he cannot maintain such a suit. Of course they do not answer the question as to how far he may carry it; but that he can maintain such a suit for the purpose of protection, for the purpose of obtaining, as in this case, a receiver, I should think there can be no doubt whatever." (p. 274.)

4. Did the district court have jurisdiction to appoint a guardian of the estate of these nonresident incompetents?

The purpose was to conserve the property pending the primary action where other substantial relief was sought. Ordinarily a receivership is the proper remedy to accomplish this end. (*City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, 178 Pac. 438; G. S. 1935, 60-1201.) But is a receivership the only remedy?

It is needless to say that guardianship or custody of property, with which we are now concerned, is to be distinguished from guardianship of the person. A guardian of the person must be appointed at the domicile of the ward. (Restatement, Conflict of Laws, section 149.) So, too, we have held that a guardian of the person and estate of a lunatic or incompetent must be appointed in the county where such person has a permanent residence. (*Foran v. Healy*, 73 Kan. 633, 85 Pac. 751; *Trust Co. v. Allen*, 110 Kan. 484, 204 Pac. 747.)

In the case at bar we have the situation of nonresident incompetents, not so adjudged, owning property in Kansas which they are in danger of losing through undue influence or their own incapacity if it is not conserved for them by a court of equity. Ordinarily one would expect to go to the probate court to appoint a guardian, but our statutes relative to probate courts do not cover the situation of a nonresident actually incompetent, but who has not been so adjudged, owning property in this state, and our decisions clearly indicate the nonexistence of a remedy for the situation in the probate

court. Under such circumstances the district court with its inherent equitable powers over the estates of incompetents is the only forum to which resort may be had.

It would be an astonishing hiatus in the law if real and personal property in this state, belonging to a nonresident incompetent, could not be protected from waste and spoliation.

There is no doubt equity has full and complete jurisdiction over the persons and property of incompetents, where the jurisdiction has not been taken away by the statute. The jurisdiction is plenary, and potent to reach and afford relief in every case where it may be necessary to preserve their estates and protect their interests. (10 R. C. L. 340; Woerner on Guardianship, § 18; 28 C. J. 1082; compare *Witt v. Heyen,* 114 Kan. 869, 874, 221 Pac. 262.)

There is no doubt that under the constitution (Art. 3, Sec. 6) and our statute (G. S. 1935, 20-301) the district court is a court of general equity jurisdiction.

It is equally well established that under the constitution (Art. 3, Sec. 8) and our statute (G. S. 1935, 20-1101) the jurisdiction of the probate courts over incompetents is not exclusive.

In 21 C. J. 121, 123, it is stated that Kansas belongs to the group of states where the statutes relative to probate courts have not taken away the equity jurisdiction of courts of general jurisdiction in such matters. Perhaps our leading case is *Shoemaker v. Brown,* 10 Kan. 383.

In *Klemp v. Winter,* 23 Kan. 699, 703, the court said:

"Under the laws of this state, the district courts of Kansas possess general equity and chancery jurisdiction, as well as general common-law jurisdiction; and unless something can be found to take away a portion of this jurisdiction, or to limit the exercise thereof, the district courts undoubtedly have the power to hear and determine all such cases as the present case. Now, there is no law in this state expressly taking away or limiting the jurisdiction of the district court with reference to this particular case or class of cases; and there is no law impliedly doing so, as we think."

In *In re Hyde, Petitioner,* 47 Kan. 277, 27 Pac. 1001, the court, after citing *Shoemaker v. Brown,* said:

"It is further said in that case, that the district courts of this state have full chancery powers, and that courts of equity have always had a paramount jurisdiction over the estates of deceased persons; that these powers are not taken away by the statutes regulating the duties and defining the powers and jurisdiction of the probate court. This has been maintained in many other cases, and it must be held to be settled law in this state that, when certain facts exist, growing out of the liabilities of a deceased person, or it may be arising

out of the settlement of the estate of a deceased person, wherein the probate court, by reason of its limited jurisdiction and restricted authority, cannot protect and enforce the rights of all persons involved in the controversy, the equitable power of the district court may be invoked in their behalf. In the case of the *Kansas City Bank v. Elizabeth Woodman et al.,* out of which this controversy grows, there are two questions that sufficiently support the jurisdiction of the district court to entertain the action. . . . The ordinary proceedings of the probate court are inadequate to the task of determining the many questions that may arise, and its restricted process and limited powers not sufficient for all the purposes of such a litigation. The primary jurisdiction in such cases rests with the district court." (pp. 281, 282.)

The case of *In re Sall,* 59 Wash. 539, 140 A. S. R. 885, is instructive. In that case Nels Oscar Sall, a resident of Alaska, while with a team and sled on the Chitna river, fell through the ice and floated downstream beneath it for a distance of about seventy feet before being rescued by his companions. The nervous shock impaired his mental faculties and he finally wandered off and disappeared. He owned property in the state of Washington, and a guardian was sought to be appointed for his estate in the superior court of that state. The supreme court held that the superior court was vested with an inherent jurisdiction to protect estates of nonresident incompetent persons, irrespective of any statute, by the application of general equitable powers and principles, and that the jurisdiction to appoint a guardian of the estate of an incompetent does not depend upon his domicile.

In that case the court said:

"It is contended that section 1 defines the jurisdiction of the court, and that section 4 cannot be given effect unless it is also made to appear that the incompetent is, in fact, domiciled in the county. If this effect is given to the statute, we think, unquestionably, that the contentions of the appellant should prevail. But, construing the act as a whole, and recognizing the necessity as well as the duty of the state to protect the estates of incompetent persons, the construction put upon the statute by appellant may well be doubted. A careful examination of the law on our own account convinces us that the superior courts have an inherent jurisdiction to protect estates of nonresident, incompetent persons; and that, while it is generally said that the power to appoint guardians is purely statutory, the power in fact lies in the sovereignty of the state, and the procedure only is statutory. In England, from whence we have derived our common law and the accepted heads of equity jurisdiction, the king assumed the care of insane persons and their property *in parens patriae.* After a declaration or finding of insanity, the jurisdiction in lunacy cases was held in some early cases to be no longer exercisable under the king's sign manual, but in virtue of the general powers of

the court: *Ex parte Grimstone*, 2 Amb. 706; *Burford v. Lenthal*, 2 Atk. 551; *In re Fitzgerald*, 1 Ll. & G. t. P. 20, 2 Sch. & Lef. 439." (p. 542.)

5. It is argued by counsel that the next friends are also next of kin of Henry and his sister, and that they want the property tied up by a legal guardian, so that when the plaintiffs die, the Basketts, the next friends, will inherit the same. This argument evinces a complete misapprehension of the applicable principles of equity. It is fraud that puts a court of equity in motion.

"Where the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor." (Restatement, Restitution, § 166.)

The property having been acquired by fraud, equity compels restitution. The question of the ultimate destination of the property under the statute of descent and distributions is irrelevant. It does not lie in the mouth of a fraudulent transferee, who has induced his dupes to transfer their domicile to another state, evading the process of the courts in the state of Kansas, to question the motives of those who are assisting the court in unearthing his frauds. *(Barnett v. Equitable Trust Co.*, 21 F. 2d 325; *U. S. v. Equitable Trust Co.*, 283 U. S. 738, 51 S. Ct. 639, 75 L. Ed. 1379.)

The evidence in this case introduced at the time of the hearing of the application for the appointment of a guardian for the estates of Joseph M. Henry and Mary Shintaffer clearly shows these persons incompetent. The re-transfer of the property by Edde to Henry and his sister was an obvious subterfuge to oust the jurisdiction of the court. I think the judgment and orders of the trial court should be affirmed.