JULIA FIALA, BY MARY RERUCHA AND VICTORIA BRUNER, AS HER NEXT FRIENDS, ET AL., APPELLANTS, V JOHN G. TOMEK ET AL., APPELLEES.

81 N. W. 2d 691

Filed March 8, 1957.    No. 34061.

*Russell A. Souchek* and *E. A. Coufal,* for appellants.

*Bryant & Christensen* and *Tomek & Tomek,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Butler County by Julia Fiala, a widow, by her next friends Mary Rerucha and Victoria Bruner, two of her daughters, and Mary Rerucha, Victoria Bruner, Martha Bruner, Helen Leet, and Lucile Fiala Wynn, her daughters, as plaintiffs, against the five sons of Julia Fiala, Frank Fiala, John Fiala, Raymond Fiala, Charles Fiala, and Joseph Fiala and their wives who need not be named. There are other parties made defendants who, for the purposes of this appeal, need not be considered. The purpose of the action was to have the court find and render judgment canceling the conveyance of the plaintiffs' interests in certain land located in Butler

County and to quiet title thereto in the plaintiffs; to have the court find and render judgment in favor of Julia Fiala to have an interest in the proceeds of the sale of certain land commensurate with her rights; and to require the defendant sons of Julia Fiala, as agents who shared in the rentals of all the land in question, to account for the same. The judgment of the trial court was generally in favor of the defendants, adjudging that the conveyance of plaintiffs' interests in certain lands described in the pleadings be not set aside or the title quieted in the plaintiffs, and that the accounting be reserved to be determined in the future, dependent upon the decision of this court as hereinafter appears. From the order overruling the motion for new trial, the plaintiffs have appealed to this court.

On November 8, 1955, the plaintiffs filed their second amended petition alleging in substance that the plaintiff, Julia Fiala, by reason of old age, weakness of mind, and undue and undeserved credulity and reliance upon her sons, was incapable, unassisted and independently, of conducting her own affairs and by reason of her condition was liable to be deceived or imposed upon by deceiving, artful, or designing persons and could not properly take care of and manage herself and her property; that this action was therefore brought by Mary Rerucha and Victoria Bruner as the next friends of Julia Fiala; and that no guardian had been appointed for Julia Fiala. The pleadings admitted that prior to his death in 1936, Frank J. Fiala and Julia Fiala were husband and wife, and during their marriage relationship there was born to them ten children, all of whom have been previously named.

The pleadings also admitted that Frank J. Fiala died intestate owning certain lands located in Butler County which are described in the petition; that Julia Fiala was vested with the homestead right for the term of her life in certain described land; that she was entitled to an undivided one-third interest in all the land; and that

the children were entitled each to a one-fifteenth interest in all the land.

The pleadings admit the execution of a life lease pleaded in the plaintiffs' second amended petition, recorded in book 4 of the lease and contract record in the office of the county clerk of Butler County. The pleadings further admit that there was a sale of a part of the land, and a stipulation was entered into relative to that transaction.

The plaintiffs' second amended petition alleged that after the death of her husband and prior to November 6, 1936, the sons of Julia Fiala conceived the plan and purpose of obtaining a conveyance of the interests of the daughters for a nominal consideration, and obtaining a conveyance of the interest of Julia Fiala by fraudulently representing to her and her daughters that the sons would farm the lands of which Frank J. Fiala died seized, raise crops thereon, and pay to Julia Fiala annually two-fifths of all the crops raised to be delivered by them to market, and the customary cash rent for the pasture and hay land; that the sons then and at that time did not intend to fulfill such promise but planned and intended to allow to her from the proceeds of such crops a meager and inadequate amount for the necessaries of life and to use and appropriate the remainder, other than necessary to pay taxes, to their own use; and that Julia Fiala relied upon and believed in such representations. It was further alleged that on November 6, 1936, Julia Fiala, on the basis of said fraudulent representations, executed a conveyance of said lands of which Frank J. Fiala died seized to the ten children in equal shares; that pursuant to said plan and purpose, the sons procured a conveyance from their sisters for a nominal and insubstantial consideration, but before the sons obtained the same the daughters insisted the obligation of the sons to provide and pay said income be set up in written form, and to that end they required an agreement of the daughters and the sons be executed

and delivered to the mother providing for her receiving said income, and to that end there was executed by the sons and their wives and by the daughters a life lease; and that after the life lease had been prepared and delivered to the mother, on January 27, 1936, the daughters, for a consideration, conveyed their interests, subject to the life lease agreement, to the sons of Julia Fiala in equal shares.

The plaintiffs further alleged that the son Frank V. Fiala farmed the lands in Section 29 from the year 1937 through the year 1952; that the land was productive and Frank V. Fiala realized and raised good crops thereon, sold a portion that he elected to allot to his mother as her share of the crop, and deposited the proceeds to her credit in a bank; and that in the period he farmed the land from 1942 until 1952, he represented to his mother that he had deposited the proceeds of her full share of the crop and the cash rental but, as a matter of fact, he did not account for the full share of the crop she was entitled to receive. The petition further alleged that Frank V. Fiala used the funds he deposited in his mother's account for his own purposes in buying material for and constructing building improvements and other improvements to his benefit and to the benefit of the owners of the land; and that the average yearly fund, for the years 1942 to 1952 inclusive, to maintain a home and provide for the support and maintenance of the mother did not exceed $300.

The petition also contained an allegation that the sons John, Joseph, and Charles farmed the land in Section 33 for the years 1942 to 1952, inclusive, and agreed to pay a crop rental of two-fifths of the crops raised on the land delivered at the market and cash rental for the pasture and hay land; that they failed to pay cash rent, and accounted for only a portion of the crops which under the terms of the tenancy were to be delivered at the market for their mother; that they drew funds from their mother's account for their own use; that their

mother left all of the accounting and withdrawal of funds to her sons which enabled them by fraud, deceit, and misrepresentation to keep her uninformed as to the nature of the transactions; that the terms and conditions of the life lease had been broken and violated by the defendants; and that the plaintiffs were entitled to the cancellation of the said deeds executed by them pursuant to the lease and contract, and restoration to them of the land conveyed by them to defendants, or to the proceeds of the sale of the land.

The plaintiffs prayed that the conveyance of their interests in all of the real estate be canceled as to the land in Section 29, and title thereto be quieted in them; that Julia Fiala be decreed to have an interest in the proceeds of the sale of the land in Section 33 commensurate with her rights in said premises; and that the sons who shared the rentals as above alleged be required to account for the same.

The defendant sons and their wives, except Joseph and his wife, in their separate answer to the second amended petition alleged that all the matters of rentals and management of the lands described in plaintiffs' second amended petition occurred and arose prior to March 1, 1949, and any right to rentals and accounting due, or alleged to be due, Julia Fiala prior to said date were barred by the statute of limitations; that more than 4 years had elapsed since the accrual of the cause, or causes, of action, if any, of Julia Fiala; that more than 5 years had elapsed since the recording of the deed, and the cause of action, if any, accruing to Julia Fiala to cancel the deed was barred by the statute of limitations; and that Julia Fiala had filed a dismissal of the above-entitled action, and no further proceedings should he had in the cause and the action should stand dismissed. They prayed that the dismissal of Julia Fiala, as filed, be sustained; that plaintiffs' second amended petition be dismissed; and that said defendants recover their costs expended.

The plaintiffs' reply contained a general denial of all matters pleaded in the answers except those therein admitting certain allegations of the plaintiffs' second amended petition; alleged that a motion filed by the defendants to dismiss these proceedings by reason of the dismissal filed by Julia Fiala was overruled by the district court and without prejudice to said ruling and without waiving the same alleged that the dismissal of Julia Fiala was obtained by the defendants, or some of them, by fraud and misrepresentation; and renewed the prayer of the petition for cancellation of the instrument and for an accounting against the defendants.

The record discloses that Frank V. Fiala was called as a witness by the plaintiffs with reference to the issue involving an accounting. His examination proceeded with a few questions when counsel for the defendants interposed an objection on the part of all the defendants except Joseph Fiala and his wife to the following effect: That no further proceedings in the matter be had for the reason that the same stands dismissed of record in this court. The court said: "I think I will take that motion under advisement and determine that along with the matters of the case, unless it appears I can rule on it at an earlier time. I think there has been no showing or evidence in connection that there was a dismissal and there was a motion to have the dismissal disregarded or dismissed and there has been no evidence one way or the other on that, as I recall."

Defendants' counsel then made a motion on behalf of the same defendants that no further proceedings be had in the matter for the reason that the action was brought by Mrs. Bruner and Mrs. Rerucha in behalf of Julia Fiala, they being daughters and merely heirs apparent, and the action was not brought by the real party in interest. This motion was taken under advisement by the court.

After a few more questions were propounded to the witness, the defendants objected to the line of question-

ing having to do with the accounting for the same reasons as heretofore stated. There was some discussion between counsel for plaintiffs and the court. The court stated: "Well, if this evidence is going to an accounting I think it is coming at the wrong time; and objection is sustained. * * * if the case has been properly dismissed by the party entitled, or, if she is the real party in interest and competent to bring the action and has not brought it herself, those questions might dispose of the case without even going into the accounting; * * *."

After the court ruled, one of counsel for the plaintiffs made an extended statement which included this declaration: "Well, at the present time I want to show, with the case now at issue on the cancellation as well as the accounting, I want to show the fact that this gentleman (Frank V. Fiala) was during this period of time an agent and managed and cared for the affairs of the real party in interest."

The court responded that he wanted counsel to have an opportunity to present his case in full, everything that was in the petition, if he would get at it in the proper order. The right of the daughters to bring the action as next friends was raised by motion. The court said he felt the motion was good. The court said: "I overruled the motion and now it is your duty to prove that these daughters have the right to bring this action as the next friend of the mother. They are not the real parties in interest and under the statute the action must be brought by the real party in interest. Now it's possible * * * you can make a showing in the evidence that they are authorized to bring this action as next friend of the mother; * * *." The case proceeded to trial, and at the close of the evidence counsel for the defendants made a motion in behalf of the same defendants to dismiss the second amended petition and reply filed therein. The reasons therefor are contained in the trial court's order

dated April 12, 1956, which will be referred to later in the opinion.

The court, on December 22, 1955, rendered the following order: "Trial resumed at 9:30 A. M. pursuant to adjournment. Plaintiff introduces additional evidence and rests as to the phase of the case being tried which is the right of the named next friends to bring the action for Julia Fiala. Defendants adduce evidence on the phase of the case now being tried and rest. Defendants move for a dismissal on grounds stated in record. The motion is argued by counsel for both sides. At 3:45 P.M. the motion is sustained but jurisdiction is retained to try the issues in the case which have not been tried in case this decision is later reversed by the Supreme Court."

The plaintiffs filed a motion for new trial, and upon due consideration thereof, the court entered an order reinstating the case for trial. This order was made April 12, 1956, as follows:

"Pursuant to a suggestion by the Court this cause proceeded to trial upon questions raised by the pleadings other than the question of accounting. At the end of the evidence upon the issues so tried the defendants moved for a dismissal of plaintiffs' petition on the grounds, first, that the action was not brought by the real party in interest and that there was an insufficient showing to sustain the right of the two daughters of Julia Fiala to bring the action as her next friend; second, that there is a presumption that Julia Fiala was competent to execute the dismissal of the suit received in evidence as Exhibit 2; and third, that in view of Exhibit 6, by which Joseph Fiala and Frank Fiala were appointed agents to collect the rents for Julia Fiala, the case could not be maintained in any event except as against the agents for an accounting as to rents collected or for failure to collect rents.

"The motion was sustained and the case dismissed. A motion for new trial was filed, argued and submitted.

"In considering the motion for a new trial the evi-

dence has been reviewed and the Court finds that:

"1. Julia Fiala is not insane, but she is of advanced age and there is evidence of her lack of ability at this time to adequately represent herself. * * * The Court was in error in dismissing the action completely, and it should be reinstated to the extent hereinafter provided.

"2. Upon the evidence in the record it appears that Exhibit 2 (the dismissal of the action) was executed by Julia Fiala under a mistake of fact and it should not be recognized as a valid dismissal of the action.

"3. There is no evidence of fraud in the execution and delivery of the deeds, Exhibits 8 and 9, and the life lease, Exhibit 10. On the contrary, it appears that these instruments recognized and carried into effect a plan that had been proposed by Frank J. Fiala before his death whereby the sons would get the real estate and those daughters then unmarried would receive furniture and furnishings or money in lieu thereof to equal the value of the furniture and furnishings which had been given to the other daughters upon their marriage. It was a plan customary among such families. It was worked out with the advice and assistance of a competent attorney, who appears to have represented all the parties as a family, and it was approved by all of them. Had the plan not been acceptable it would undoubtedly have been questioned before the passage of seventeen years. All of the children, both sons and daughters, had a duty and a responsibility so far as Exhibits 8, 9 and 10 are concerned to see that Julia Fiala received the rents and profits from the land during her lifetime. By Exhibit Number 6 the duty of managing the land, collecting rents, paying taxes, paying insurance on the buildings and keeping them in repair devolved upon Joseph Fiala and Frank Fiala. The issue as to whether or not they have fulfilled their duties as agents and collected and accounted for all rents and profits should now be tried. * * * There is no basis under the pleadings and the evidence for cancelling (sic) the deeds, Exhibits

8 and 9. Such a cancellation would result in a loss for the other sons because of the dereliction, if any, on the part of Joseph Fiala and Frank Fiala. The remedy of Julia Fiala is adequate without requiring any forfeiture of title.

"4. Martha Bruner, Helen Leet, Lucile Fiala Wynn, Mary Rerucha and Victoria Bruner, as individuals, have no interest in the subject matter of the suit except as prospective heirs of Julia Fiala, which gives them no standing as plaintiffs herein. They have at all times mentioned in the pleadings been of full legal age and competent * * *. The petition insofar as it claims any rights in their behalf should stand dismissed."

The court then ordered that the motion for new trial be in part sustained and in part reversed; that the former dismissal of the case stand as to all parties except Julia Fiala, by Mary Rerucha and Victoria Bruner, as her next friends, as plaintiff, and Frank Fiala and Joseph Fiala, as defendants, for an accounting of their acts and doings as agents; and that the case be reinstated for trial for that purpose.

Exhibit No. 6, made July 3, 1937, appointed Frank Fiala and Joseph Fiala as agents to manage the land, collect the rents, pay the taxes, and keep the buildings in a good state of repair.

Exhibit No. 8 is a quitclaim deed between Julia Fiala, widow, and her sons and daughters whereby she conveys her interest in the land described therein to them, acknowledged December 6, 1936.

Exhibit No. 9 is a quitclaim deed made January 25, 1937, by the sisters and the husbands of those who were married at the time, to their brothers, share and share alike, as tenants in common, wherein the sisters conveyed their interests in the land described therein for and in consideration of $500 to Martha Fiala, $500 to Lucile Fiala, $500 to Helen Leet, $1 to Mary Rerucha, and $1 to Victoria Bruner, to them duly paid and receipts acknowledged. This deed carried the following

provision: "It is agreed and understood by the parties hereto that the property hereinbefore described is subject to a certain life use to Julia Fiala * * *."

Exhibit No. 10 is a life lease made December 6, 1936, by the sons and daughters of Julia Fiala and the husbands and wives of those who were married at the time, providing for payment to Julia Fiala of the life income from the real estate conveyed by her to her sons and daughters. This instrument provided that in case any of the conditions were broken by the sons and daughters, the conveyance made to them should be void and Julia Fiala should have the full rights in the real estate as though the conveyance had not been made.

The plaintiffs assign as error the overruling of the plaintiffs' motion for new trial filed April 23, 1956, on the ground that said motion was filed out of time.

The trial court rendered its judgment on April 12, 1956. The motion for new trial was filed on April 23, 1956. The day the judgment was entered is excluded. The tenth day fell on Sunday, and it is excluded. The motion for new trial was filed on the eleventh day, which was Monday. The motion was filed in time. See Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265.

Some contention is made by the plaintiffs that the order of the trial court of December 22, 1955, and its order of April 12, 1956, are contradictory with reference to the issues tried by the trial court. The final order of the trial court entered April 12, 1956, clearly indicates that all of the issues joined by the pleadings were tried and determined by the trial court, with the exception of the issue of the accounting. Regardless of the orders or the judgment rendered by the trial court, the cause is here for trial de novo. The following are applicable.

An equity court obtaining jurisdiction of a cause for any purpose will retain it for all purposes and proceed to final determination of all matters in issue thus avoiding unnecessary litigation. See, Schreiner v. Witte, 143

Neb. 109, 8 N. W. 2d 831; Dennis v. Omaha Nat. Bank, 153 Neb. 865, 46 N. W. 2d 606, 27 A. L. R. 2d 674; Brchan v. The Crete Mills, 155 Neb. 505, 52 N. W. 2d 333; Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131.

Actions in equity, on appeal to this court, are triable de novo, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. See O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403.

We conclude that there is no merit to the plaintiffs' contention with reference to the contradiction in the orders of the trial court claimed by them as above set forth.

This brings us to the questions as to whether or not the dismissal of the action filed by Julia Fiala should be sustained, and did the trial court err in determining that Julia Fiala, as the real party in interest, was not competent to bring the action in her own behalf and was properly represented by two of her daughters as next friends.

In addition, we will consider the evidence in connection with the assignment of error made by the plaintiffs that the trial court erred in failing to cancel the conveyance as pleaded in the plaintiffs' second amended petition.

Before setting forth the evidence on the issue of the competency of Julia Fiala to bring this action as the real party in interest in her own right, we deem it necessary to set forth the following authorities with reference to such issue.

As stated in 28 Am. Jur., Insane and Other Incompetent Persons, § 104, p. 738: "The decisions are generally agreed, moreover, that in all cases where a person is not actually insane, but is incapable, through age or

weakness of mind, of conducting his affairs, suits may be maintained in his behalf by his next friend, and that it is within the discretion of the court to allow a suit so instituted to proceed; it may order a stay of proceedings to await the due appointment of a general guardian, or order the same discontinued, as it sees fit." See, also, Henry v. Edde, 148 Kan. 70, 79 P. 2d 888; Plympton v. Hall, 55 Minn. 22, 56 N. W. 351, 21 L. R. A. 675; Annotation, 64 L. R. A. 533.

In 28 Am. Jur., Insane and Other Incompetent Persons, § 124, p. 754, it is stated: "In general, any proof that is material and relevant to the issue of sanity or competency may be admitted upon the trial of such issue; * * *. The tendency of most courts before whom an issue of sanity or competency is presented for determination is to permit a relatively wide latitude in admission of proof of insanity or incompetency." See cases cited under note 17.

"It is well settled that in the determination of the mental condition of a person, his conversation, acts, declarations, and conduct in general may be shown at the trial, upon the theory that such proof is frequently decisive upon the question of sanity and insanity." 28 Am. Jur., Insane and Other Incompetent Persons, § 132, p. 759.

In 28 Am. Jur., Insane and Other Incompetent Persons, § 138, p. 764, it is said: "* * * the physical condition of a person alleged to be incompetent may be considered only in so far as it affects his mental condition." See, also, Annotations, 17 A. L. R. 1074, 113 A. L. R. 356.

There is no statute in this state which forbids commencement of an action by an incompetent by his next friend when incompetency has not been adjudged and no guardian has been appointed. The authorities are quite uniform that such an action may be maintained when the person in whose behalf the action is commenced is not insane but incapable of managing his affairs, has not been adjudged to be incompetent, and has no appointed guardian.

The record discloses that Julia Fiala gave birth to 11 children during her marriage relationship with Frank J. Fiala who died in November 1936. One of the children died; the other ten, five sons and five daughters, all grew to adulthood and married. At the time of trial Julia Fiala was nearly 80 years old. She testified that Mrs. Bruner, one of her daughters, purchased her groceries during the time she lived in David City, which was probably from 1938. Sometimes her sons Frank or Raymond brought groceries to her, but not often. She never bought them herself, nor did she pay for anything during the time she resided in David City. Her husband, during his lifetime, attended to all business matters. She could understand what a dollar or fifty cents was, but was not able to recognize the denomination of currency. From her testimony it appears also that she was unable to read and comprehend the meaning of the English language and was not too well versed in the Bohemian language. She was unaware of the fact that she had $4,000 on deposit in the Brainard bank.

Victoria Bruner, a daughter of Julia Fiala, testified that she lived in David City, was 58 years old, and lived with her parents on the home farm until she was married in 1916. After the birth of her fourth child, Julia Fiala became partially paralyzed from which she has never fully recovered. Julia Fiala did not understand the value of money, except perhaps she knew the value of a dime or a nickel, and never transacted any business. The father of this witness was in business in Brainard from 1910 to 1922. Her mother never directed the farm work or told the children what to do around the farm.

Lucile C. Wynn, another daughter of Julia Fiala, testified that she was 54 years old and was the fourth child born to Julia Fiala. She lived on the home place until she was 22 years old, and had charge of the home until she left. Her mother was very nervous and often criticized and scolded the children without cause. The children would then appeal to their father for an under-

standing, and he would listen to their complaints and render them advice as to what to do under the circumstances. Due to her physical condition, Julia Fiala was unable to express herself, and her sentences were incomplete. She did not advise the daughters in the preparation of food or sewing. The oldest daughter and her father always bought the food, and her father and her sister advised her in the preparation of the food.

Mary Rerucha, a daughter, testifed that she was 62 years old and she took part in the management of the home because her mother was weak and had to be helped. She helped with the work as soon as she was old enough to do anything. Her mother had headaches which occurred at intervals and which have since persisted. She stayed at home until she was 26 years of age in 1920, when she married. There was considerable sewing to be done because of the large family, and they made most of their clothes. The sewing was done by the girls. Her father usually ordered the groceries. When she was old enough, he gave her the money to purchase them, and as she grew older she had the responsibility of the cooking. Her father taught the children their prayers and the Bohemian language. Her mother never took any part in the management of the farms. Frank was her mother's agent after her father died.

Alois Rerucha, a son-in-law of Julia Fiala, testified that Julia Fiala does not read, she just looks at the pictures in the paper; that she has had no experience in the management of farms and does not understand business; and that at the time this litigation was started, she was not fully capable of managing her business.

The record shows that prior to his death, Frank J. Fiala had been talking about a plan as to the manner of settling his estate. He wanted his sons to have the land, and his daughters to have $500 each, or the equivalent in personal property. The reason his plan for settlement was not made in accordance with his wishes was because Raymond, the youngest son, was not yet.

21 years, of age. He was within 2 months of his twenty-first birthday when his father was killed. A few days after Frank J. Fiala passed away, Alois, after obtaining advice from the family, engaged the services of attorneys to come to the family home and advise the family with reference to the settlement to be made to conform to the father's plan. Thereafter all of the sons and daughters met at the home of their mother. There was some discussion among members of the family with reference to the settlement and suggestions, made by the attorneys. As a result the mother and all of the children agreed to the settlement as heretofore stated.

The evidence discloses that Julia Fiala is incapable of understanding how to transact business or to understand business transactions. She is unacquainted with the denominations of currency and the value of money; she is not capable of reading and writing the English language to the extent of making any kind of an analysis by herself with reference to her rights; nor, for that matter, is she sufficiently able to comprehend in the Bohemian language business transactions that might affect her rights. In addition, her physical condition, which to some extent affects her mentality, is one of the factors in considering her responsibility to transact business.

We conclude that the trial court was correct in determining that Julia Fiala should be represented by her next friends, two of her daughters.

We fail to find any evidence of fraud on the part of any of the defendants with reference to the settlement made by the mother, Julia Fiala, and her sons and daughters regarding the estate of the husband and father, Frank J. Fiala, deceased. All of the parties to the settlement approved it. It would appear that had the plan and the settlement made in accordance therewith not been acceptable to the mother or her sons and daughters, all having an interest therein, it would undoubtedly and without question have been questioned before the pas-

.sage of at least 17 years or more by some one of them. In addition, all of the children, both the sons and daughters, had a duty and a responsibility insofar as exhibits Nos. 8, 9, and 10 are concerned, to see that their mother received the rents and profits from the land during her lifetime.

We conclude that the trial court did not commit error in finding that there was no evidence of fraud in the execution and delivery of the deeds as shown by exhibits Nos. 8 and 9 and the life lease as shown by exhibit No. 10.

We should add that while the decree of the district court might indicate that the daughters of Julia Fiala at no time were parties having an interest in the subject matter in litigation, they in fact did have such an interest for had they succeeded in obtaining judgment canceling the conveyance as prayed for in the plaintiffs' second amended petition, they then would have been entitled to their respective interests in the land owned by their father at the time of his death, since he had died intestate. Having failed to prove fraud, as stated by the trial court in its decree, the daughters have no interest in the subject matter of the action.

The issue with reference to an accounting as to whether or not Joseph Fiala or Frank V. Fiala have fulfilled their duties as agents as set forth in exhibit No. 6, and collected and accounted for all the rents and profits was reserved for future determination by the trial court.

For the reasons given in this opinion, the plaintiffs having failed to prove fraud as heretofore set forth, the judgment of the trial court is affirmed.

AFFIRMED.